## James Blair *vs.* Walter Forehand.
## James Hutchinson *vs.* Same.
## Edwin W. Smith *vs.* Same.

Authority to regulate the keeping of dogs under the penalty of having them summarily destroyed without previous adjudication is within the police power vested in the legislature by the Constitution of the Commonwealth; and the provision of the St. of 1867, c. 130, § 7, that any person may, and every police officer and constable shall, kill or cause to be killed all dogs, whenever or wherever found, not licensed and collared according to other provisions of the statute, is within the constitutional limits of that authority.

A constable to whom a warrant is issued under the St. of 1867, c. 130, § 7, by the mayor or chairman of the selectmen, directing him to proceed forthwith to kill or cause to be killed all dogs within the city or town, not licensed and collared according to the provisions of the statute, may enter, without permission, the close of the owner or keeper of such a dog, for the purpose of executing his warrant; and is not liable either for trespassing on the close, or killing the dog, or converting its collar, if, standing on the doorstep of the dwelling-house, and after being forbidden by the inmate to shoot, he shoots at the dog while it is lying on the ground in the close, and again while it is trying to escape to the highway, and a third time at it in the highway, and, after there killing it, brings back its carcass, with its collar, and leaves them at the place where it was lying when he first shot; nor if he reaches his hand into an open shed where the dog is tied by a rope attached to its collar, unties it, leads it by the rope to another part of the close, and there kills it and leaves it with the collar and rope; nor if he enters the dwelling-house through an open door to inform the inmates of his duty and show his warrant, and leads out the dog, wearing a collar, which had followed him in, (no objection being made to his entering or to his taking the dog and collar out again,) and kills the dog on another part of the close and there leaves it with the collar; the collar being in neither case separated by him from the animal.

THREE ACTIONS OF TORT, the declaration in each of which contained two counts, one in the nature of trover for a dog and dog-collar, and the other of trespass for breaking and entering a close, and there taking and carrying away a dog and dog-collar and shooting the dog.

The defendant justified upon the ground that the dogs were not registered, numbered, described and licensed according to the St. of 1867, *c.* 130, and that he was a ⌣ stable of Grafton, and had received a warrant from the chairman of the selectmen of that town, (which is copied in the margin,*) and duly served and returned the warrant according to that statute, and under that warrant did all the acts complained of.

Each case was submitted to the decision of the superior court, and, on appeal, of this court, upon a statement of facts, in which were admitted the plaintiff's ownership of the dog and collar and occupation of the close, the entry of the defendant thereon without the plaintiff's permission, all the facts set up by way of justification, and that the dog was kept and killed in the town of Grafton.   The other facts agreed in each case were as follows :

*Blair's* close was separated from the highway by a fence, and had a path leading from the dwelling-house to the highway.   The defendant, standing on the doorstep of the dwelling-house, and after being forbidden by the plaintiff's wife to shoot, discharged his gun at the dog while lying on the ground within the fence, and again when the dog was in the path, and a third time, kill-

---

* " [Seal.] Commonwealth of Massachusetts.  Worcester ss.  To Walter Forehand, constable of the town of Grafton.  In the name of the Commonwealth of Massachusetts you are hereby required to proceed forthwith to kill or cause to be killed all dogs within said town not duly licensed and collared according to the provisions of the act of the year eighteen hundred and sixty-seven, entitled ' An act concerning dogs and for the protection of sheep and other domestic animals.'  And you are further required to make and enter complaint against the owner or keeper of any such dog.  Hereof fail not, and make due return of this warrant with your doings, therein stating the number of dogs killed and the names of the owners and keepers thereof, and whether all unlicensed dogs in said town have been killed, and the names of persons against whom complaints have been made under the provisions of said act, and whether complaints have been made and entered against all the persons who have failed to comply with the provisions of said act, on or before the first day of October next.  Given under my hand and seal at Grafton aforesaid this sixth day of July in the year eighteen hundred and sixty-seven.

" S. E. Stone, Chairman of the Selectmen of Grafton."

ing the dog, when it was in the highway; and then took the dog with its collar from the highway to the place where it lay when first shot at, and there left them.

*Hutchinson's* dog was tied up by a rope attached to its collar in a woodshed within the same inclosure as his dwelling-house and was untied by the defendant without entering the shed otherwise than by reaching in his hand, and led by the rope to another part of the close, where the defendant shot the dog and left it with the collar and rope there.

In *Smith's* case, the defendant rapped at an open door of the dwelling-house; no response was given; he then entered the house, and the dog followed him in from without, having on its neck a chain collar with a plate thereon, marked with the plaintiff's name. The plaintiff's mother, who had been left in charge of the house, entered the room where the defendant was; he showed her a warrant, and said he must kill the dog; she asked him if he could not wait until the plaintiff came home; the defendant informed her that he could not wait, and thereupon, without further objection on her part, took the dog and collar from the house, and killed the dog upon another part of the close, and there left the dog and collar.

*J. Hopkins,* for the plaintiffs. 1. As the warrant authorized the seizure and destruction of property, it was in conflict with the Declaration of Rights, art. 12, 14; for its cause or foundation was not previously supported by oath or affirmation; it contained no special designation of the objects of seizure, or of the owners thereof; and by directing the seizure and destruction to be effected by a mere executive officer, without a previous judicial condemnation, it undertook to despoil subjects of their property otherwise than by the judgment of their peers or the law of the land. Being thus void, the defendant was in no better condition than any person not an officer, and these cases, on the facts, come within the decision in *Kerr* v. *Seaver,* 11 Allen, 151; the killing of the dog was a conversion of it: and the defendant was a trespasser from the beginning. 2 Greenl. Ev § 642. *Nelson* v. *Merriam,* 4 Pick. 249.

2. At all events, the warrant did not authorize the defendant

to take or use the dog-collars. It did not by its terms. Nor could it by implication; for the collars had a value distinct and separate from the dogs; they were a kind of property not legislated against in the St. of 1867, c. 130, under which the warrant was issued; and the officer could have fully served his precept without taking or using them. Such a taking and use of them as is shown by the facts was a conversion; and made the defendant a trespasser from the beginning. *Wheelock* v. *Wheelwright*, 5 Mass. 104. *Prescott* v. *Wright*, 6 Mass. 20. *Nelson* v. *Merriam*, 4 Pick. 249. *Thurston* v. *Blanchard*, 22 Pick. 18. *Colby* v. *Jackson*, 12 N. H. 526.

3. The place where the killing might be done must be determined by the St. of 1867, c. 130, § 7, in which the language of the St. of 1864, c. 299, § 7, was retained, viz: "Any person may, and every police officer and constable shall, kill or cause to be killed all such dogs, whenever or wherever found." The word "wherever" in this connection was judicially construed in *Kerr* v. *Seaver*, 11 Allen, 151. The same right to destroy unlicensed dogs was given, in both statutes, to two classes of persons; officers, and persons other than officers. It was decided that the latter class might not kill on the premises of the owner or keeper of the dog, without a license from him. The reason given for the rule applies to both classes alike; and the former class are therefore restricted in like manner. See also *Bishop* v. *Fahay*, 15 Gray, 61.

*H. B. Staples*, for the defendant.

GRAY, J. All rights of property are held subject to such reasonable control and regulation of the mode of keeping and use as the legislature, under the police power vested in them by the Constitution of the Commonwealth, may think necessary for the preventing of injuries to the rights of others and the security of the public health and welfare. In the exercise of this power, the legislature may not only provide that certain kinds of property (either absolutely, or when held in such a manner or under such circumstances as to be injurious, dangerous or noxious) may be seized and confiscated upon legal process after notice and hearing; but may also, when necessary to insure the

public safety, authorize them to be summarily destroyed by the municipal authorities without previous notice to the owner — as in the familiar cases of pulling down buildings to prevent the spreading of a conflagration or the impending fall of the buildings themselves, throwing overboard decaying or infected food, or abating other nuisances dangerous to health. *Commonwealth* v. *Alger,* 7 Cush. 85. *Fisher* v. *McGirr,* 1 Gray, 27. *Parsons* v. *Pettingell,* 11 Allen, 512. *Salem* v. *Eastern Railroad Co.* 98 Mass. 443, 444. *License Cases,* 5 How. 581, 589, 632. *Dewey* v. *White,* Mood. & Malk. 56. 2 Kent Com. (6th ed.) 339, 340.

There is no kind of property over which the exercise of this power is more. frequent, or more necessary, than that which is the subject of the present actions. In regard to the ownership of live animals, the law has long made a distinction between dogs and cats, and other domestic quadrupeds, growing out of the nature of the creatures and the purposes for which they are kept. Beasts which have been thoroughly tamed, and are used for burden or husbandry, or for food, such as horses, cattle and sheep, are as truly property of intrinsic value, and entitled to the same protection, as any kind of goods. But dogs and cats, even in a state of domestication, never wholly lose their wild natures and destructive instincts, and are kept either for uses which depend on retaining and calling into action those very natures and instincts, or else for the mere whim or pleasure of the owner; and therefore, although a man might have such a right of property in a dog as to maintain trespass or trover for unlawfully taking or destroying it, yet he was held, in the phrase of the books, to have "no absolute and valuable property" therein, which could be the subject of a prosecution for larceny at common law, or even, according to some authorities, of an action of detinue or replevin, or a distress for rent, or which would make him responsible for the trespasses of his dog on the lands of other persons as he would be for the trespasses of his cattle, Vin. Ab. Trespass, Z; Replevin, A. 2 Bl. Com. 193. 3 Ib. 7 4 Ib. 234, 235. *Mitten* v. *Faudrye,* Pop. 161; *S. C. nom. Millen* v. *Fawen,* Bendl. 171. *Mason* v. *Keeling,* 1 Ld. Raym. 608·

*S. C.* 12 Mod. 336.   *Read* v. *Edwards*, 17 C. B. (N. S.) 245. *Regina* v. *Robinson*, 8 Cox Crim. Cas. 115.   And dogs have always been held by the American courts to be entitled to less legal regard and protection than more harmless and useful domestic animals.   *Putnam* v. *Payne*, 13 Johns. 312.   *Brown* v. *Carpenter*, 26 Verm. 638.   *Woolf* v. *Chalker*, 31 Conn. 121.

The power of regulating the keeping of these animals, under the penalty of having them summarily destroyed in case of failure to comply with the laws upon the subject, has always been freely exercised by the legislature of Massachusetts, both under the Province Charter, and since the establishment of a state government.   In 1715 a provision for the killing of " unruly and ravenous dogs " was included in a statute " for encouraging the killing of wolves."   Prov. St. 2 Geo. I. *c.* 3; Mass. Prov. Laws, (ed. 1726,) 243.   A temporary act passed in 1743 recited that much damage had been done by unruly and mischievous dogs in worrying and killing sheep and lambs on the Island of Nantucket, and declared that thereafter it should be lawful for any person in Nantucket " to kill any dog or bitch whatsoever that shall at any time be found there," without being liable to any action; and another act, passed in the following year, with a similar preamble, declared that it should be lawful for any person within the Province (except in the county of York) to kill and destroy any dog or bitch that should be found in any common land, field or inclosure, excepting the land of its owner, in the daytime, or anywhere, between sunset and sunrise, and out of the immediate care and inspection of its owner or keeper, and imposed a penalty on the owner if he refused to kill it after due notice of its being seen out of such care and inspection. Prov. Sts. 17 Geo. II. *c.* 1; 18 Geo. II. *c.* 2; Mass. Temp. Laws, (ed. 1763,) 30, 34.   Both of these temporary acts were continued in force until 1785 by successive statutes, the last of which were passed during the Revolutionary War.   Sts. Nov. sess. 1775, *c.* 5; Nov. sess. 1779, *c.* 1; Mass. State Laws, 1775–80, pp. 26, 259.   And the act utterly prohibiting the keeping of dogs in Nantucket was again extended by Sts. 1791, *c.* 38, and 1796, *c.* 69.

The dangers sought to be prevented by the dog laws of the Commonwealth, as declared in the preambles to the earlier ones, are sudden assaults upon persons, worrying, wounding and killing of neat cattle, sheep and lambs, " distressing evils from canine madness," and other injuries occasioned by dogs. These statutes, which have been the subject of repeated consideration and revision by the legislature, with a view of securing these objects, and of affording means for ascertaining the owners and making them liable for the mischievous acts of their dogs, have accordingly not only provided that any person might kill a dog assaulting him, or attacking cattle or sheep, out of its owner's inclosure; and that the owner should be responsible, in either single, double or treble damages, for mischief committed by his dog; but have also declared that it should be lawful for any person to kill any dog, as to which the requirements of law had not been complied with, under circumstances which have varied in successive statutes. At first, it was only any dog " found strolling out of the inclosure or immediate care of its owner," after due notice to him that it was suspected of being dangerous or mischievous; then " not having a collar and certified " to the assessors; and by later statutes, " any dog found going at large not wearing a collar;" " found and being without a collar;" " being without a collar;" going at large, and not registered in the town clerk's office, or the tax on which had not been paid; " going at large and not licensed and collared;" or, finally, " all dogs not licensed and collared " as required by statute, " whenever and wherever found." For the last ten years the statutes have also declared it to be the duty of certain public officers to cause such dogs to be destroyed under the circumstances pointed out; and have given a remedy against the town or county for any injury done by dogs to other domestic animals. Sts. 1791, c, 38; 1797, c. 53; 1798, c. 54; 1812, c. 146 Rev. Sts. c. 58, §§ 12–17. Sts. 1858, c. 139; 1859, c. 225. Gen. Sts. c. 88, §§ 52–66. Sts. 1864, c. 299; 1867, c. 130.

These statutes have been administered by the courts accora ing to the fair construction of their terms, and without a doubt of their constitutionality. Under the St. of 1812, c 146, which

required the owner or keeper of any dog to put a collar about its neck, to be constantly worn, with the name and residence of the owner marked thereon, and declared it to be lawful for any person to kill any dog " found and being without a collar as aforesaid," (omitting the qualification of other statutes, of " going at large " or " out of the immediate care of its owner,") it was held that no action could be maintained for killing a dog without such a collar, out of his owner's inclosure, although under his immediate care; Chief Justice Shaw saying, " We think it was the intention of the legislature not to give the owner of a dog a right to maintain an action for destroying him, un‑ less he had in fact given that security to the public, which the act required." *Tower* v. *Tower,* 18 Pick. 262.   And a person who, instead of killing a dog being without a collar, converted him to his own use, was held liable to the owner in trover, be‑ cause, in the words of Chief Justice Shaw, " The object of the statute is, not to confer a benefit on an individual, but to rid society of a nuisance by killing the dog." *Cummings* v. *Per‑ ham,* 1 Met. 555.   Similar statutes have been held in other states to be reasonable and constitutional regulations of police. *Morey* v. *Brown,* 42 N. H. 373.   *Carter* v. *Dow,* 16 Wisc. 298.

The statute under which this defendant justifies provides that the mayors of cities and chairmen of selectmen of towns shall within ten days from the first day of July annually " issue a warrant to one or more police officers or constables, directing them to proceed forthwith either to kill or cause to be killed all dogs within their respective cities or towns, not licensed and col‑ lared according to the provisions of this act, and to enter com‑ plaint against the owners or keepers thereof; and any person may, and every police officer and constable shall, kill or cause to be killed all such dogs, whenever and wherever found." St. 1867, *c.* 130, § 7.   The warrant here provided for, being general in its form, not founded on oath, nor containing any special des‑ ignation of objects, is not indeed a legal warrant of search and seizure; it is rather an appointment of the officer who is to be specially charged with the duty of executing the authority con‑ ferred by the statute.   The statute makes it the duty of every

police officer and constable to kill or cause to be killed all dogs not licensed and collared according to its provisions, " whenever and wherever found." There are no express restrictions of time or place, and no limitation, as in earlier statutes, to dogs going at large, or out of the owner's inclosure or of his immediate care. Any restrictions upon the authority of the officer arise by implication, from regard to the sanctity of the dwelling-house or the danger of a breach of the peace. But it is unnecessary in the present cases very closely to consider the extent of such restrictions, if any, which are to be implied upon the power and duty of the officer to abate what the law has declared to be in substance and effect a public nuisance. The regulations imposed by the statute upon the ownership and keeping of dogs are reasonable and easy to be complied with. If any dog is an object of value or of affection to its owner, he has only to procure and record a license and put on a collar, in order to bring it under the protection of the law.

It is agreed that neither of these plaintiffs had complied with the statute in these respects, and there is nothing in the facts agreed in either of the cases from which it can be inferred that the defendant committed any trespass upon the plaintiff's premises or any act tending to a breach of the peace. Under the defendant's authority and duty to kill or cause to be killed all dogs not licensed and collared, " whenever and wherever found," he had clearly a right peaceably to enter for that purpose, without permission, upon the close of the owner or keeper of such a dog and there kill it. In Blair's case, he did not enter the dwelling-house, or touch the dog until after he had shot and killed it, and then only to carry it back to the place where he first found it. Nor did he enter the dwelling-house in Hutchinson's case, but only reached his hand into the open shed in which the dog was tied, and led it out by the rope attached to its collar. In Smith's case, he entered the dwelling-house through the open door, unopposed, and evidently not for the purpose of taking the dog, (for it is agreed that the dog followed him in from without,) but for the lawful purpose of informing the inmates of the duty which he was about to execute, and

exhibiting the evidence of his authority, and no objection was made to his entering the house or taking the dog out again. And in neither case did he separate the collar from the dog. He cannot therefore be held liable either for trespassing on the close, for killing the dog, or for converting the collar to his own use.

The cases cited for the plaintiffs are quite distinguishable from this. *Bishop* v. *Fahay*, 15 Gray, 61, in which an officer was held liable for killing a dog taken from a dwelling-house which he had entered without the owner's leave, arose under the St. of 1858, *c.* 139, § 1, which only authorized him to kill dogs, not duly registered and collared, and "going at large." The St. of 1864, *c.* 299, § 7, under which the defendant unsuccessfully attempted to justify, in *Kerr* v. *Seaver*, 11 Allen, 151, his taking of a dog from the owner's dwelling-house for the purpose of killing him, was indeed, so far as concerns the provision immediately in question, in the very words of the statute now in force. But the person there held responsible for a trespass in the dwelling-house was a private citizen, who pursued the dog into the house after the plaintiff's wife had refused to give it up. There is hardly a more ancient or more firmly established rule of the common law, than that a man who enters my house against my will and without authority is a trespasser, though the door is open. 11 Hen. IV. 75 *b.* *Judgments for the defendant.*