ELLWOOD N. JENKINS, APPELLANT, *v.* JEDEDIAH BALLANTYNE, RESPONDENT.

PERSONAL PROPERTY.—DOG.—A dog is "property" in the United States, within the meaning of the fifth amendment to the constitution, which forbids any person being deprived of his property without due process of law.

CONSTITUTIONAL LAW.— DUE PROCESS OF LAW.— DOG REGULATIONS.—Provisions of the charter of a city authorizing a city to tax, regulate or prohibit the keeping of dogs, and to authorize the destruction of the same, when at large, contrary to the ordinance, and provisions of the ordinances requiring a registry of dogs, and the issuance of a certificate of registration, requiring the wearing of a collar by the dog with his registered number thereon and providing that all dogs "not so registered and collared," shall be liable to be killed by any person, are valid and are not in violation of the fifth amendment to the constitution.

APPEAL from a judgment of the district court of the first district and from an order refusing a new trial. The opinion states the facts.

*Mr. L. R. Rhodes,* for the appellant.

*Messrs. Kimball and Allison,* for the respondent.

ZANE, C. J.,

This action was instituted to recover the value of an Australian kangaroo hound, killed by the defendant while at large on his premises in Ogden City. The evidence on the trial tended to establish that the hound was worth $800, the value alleged in the complaint. The defendant claims that the facts proven and the ordinance in evidence authorized the killing. The ordinance is as follows:

"Sec. 3. It shall be the duty of the recorder to register any dog on application of the owner or keeper, and issue a certificate of registration, under the corporate seal, on payment by such owner or keeper to said recorder, for the use and benefit of the city, the sum of three dollars. Such certificate shall be numbered in the order of issue, and shall be in force for one year only from and after the date of the same; but may be renewed annually, on the payment of the sum of three dollars, as aforesaid.

"Sec. 4. All dogs so registered shall wear a suitable collar, with the name or initials of the owner or keeper, and the number corresponding with that of the certificate of registry inscribed thereon; and all dogs found running at large within the limits of the city, not so registered and collared, shall be liable to be killed by any person."

The provision of the charter of Ogden City authorizing the ordinance is as follows: "The city council shall have power to license, tax, regulate, or prohibit the keeping of dogs, and to authorize the destruction of the same when at large contrary to ordinance." The question is presented, had the legislature the power to authorize the city to provide by ordinance for the registration and collaring of dogs within its limits, and to authorize their destruction when at large contrary to such provisions? Though the common law recognized dogs as property, it extended to them less legal

regard and protection than to more harmless and useful
domestic animals. They were not the subject of larceny
at the common law. Later cases, however, in the United
States, hold that such property is also the subject of lar-
ceny. The fifth amendment to the constitution of the
United States declares that "no person shall  *  *  *  be
deprived of life, liberty, or property, without due process
of law;" and dogs being property, as we have seen, their
owners cannot be deprived of them without due process of
law. The question is, was the killing of plaintiff's dog by
the defendant, in view of the facts in evidence, under the
ordinance " due process of law ?"

The term "law," as used in this constitutional provi-
sion, embraces all legal and equitable rules defining human
rights and duties, and providing for their enforcement; not
only as between man and man, but also between the state
and its citizens. The term " due process of law" includes
all the steps essential to deprive a person of life, liberty,
or property; it includes all the forms and acts essential to
its application and to give effect to it. The means that
may be employed to accomplish the purpose of the law is
the process; in other words, "process" is the mode by
which the purpose of the law may be effected. And this
mode as to similar subjects, under similar circumstances,
must be the same to all persons. This is " due process of
law." Judicial action is usually required to determine
property rights against its owner, but in some cases admin-
istrative or executive action is sufficient. The emergency
may be such as not to admit of the delay essential to
judicial inquiry and consideration, or the subject of such
action or process may be of such a nature, or the condi-
tions and circumstances in which the act must be per-
formed to effect the protection and give effect to the law
may be such, as to render judicial inquiry and considera-
tion impracticable. If a man is assailed under circum-
stances inducing in him a reasonable belief that it is

necessary for him to take his assailant's life to save his own or to prevent great bodily injury, he may lawfully do so. The destruction of houses is lawful to prevent the spread of a conflagration. The killing of a horse or other valuable animal, if necessary to prevent serious injury from his attacks, is lawful. In such emergencies, and under such circumstances, the deprivation of life or liberty or the destruction of property is lawful, and not without due process of law. The purpose of municipal laws is the protection of life, liberty, and property; and, in order that they may afford such protection, they should be adapted to all situations and emergencies. The police power of the state has been used to regulate and control property in dogs to a greater extent than property in any other class of domestic animals. It is a peculiar kind of property. Such animals increase rapidly; they are usually of but little expense to their owners when allowed to run at large; and in a domestic state they retain to a considerable degree their wild, mischievous, and ferocious natures. Their trespasses and invasions of rights not belonging to their masters are often such as are impossible to prevent, and when the mischief is done sometimes it is impossible to identify the dog or his owner, and when found the latter is sometimes as irresponsible as the former; in fact, judicial process and inquiry is altogether inadequate to redress such wrongs. Hence such laws and ordinances as those in question are adopted, requiring the owners of dogs to register and collar them. By such means the owner is ascertained and made responsible, and all dogs not deemed worth the trouble and expense of registration are outlawed when at large, and liable to be killed. Such was the law regulating the right of property in dogs at the time the constitutional provision in question was adopted. That provision was not intended to abrogate or add to the laws then in force. The purpose of its authors was to secure each and all impartially the benefits of such rules and

regulations as had been established for the protection of life, liberty, and property, and such as experience and reason might suggest to the lawmaking department of the state to be enacted in the future.   In *Weimer* v. *Bunbury,* 30 Mich. 201, the court said: "We are therefore of necessity driven to an examination of the previous condition of things, if we would understand the meaning of 'due process of law,' as the constitution employs the term.   Nothing previously in use regarded as necessary in government and sanctioned by usage can be looked upon as condemned by it.   Administrative process of the customary sort is as much due process of law as judicial process.   We should meet a great many unexpected and very serious embarrassments in government if this were otherwise.   The words, it has very justly been said, 'were intended to secure the individual from the arbitrary exercise of the powers of government, unrestrained by the established principles of private rights and distributive justice.'   Per JOHNSON, J., in *Bank* v. *Okely,* 4 Wheat. 235."   The enactment of the provision of the charter above quoted by the legislature was an exercise of the police power of the Territory, and the ordinance in question was authorized by that provision. "By this general police power of the state, persons and property are subject to all kinds of restraints and burdens, in order to secure the general comfort, health, and prosperity of the state."   Tied. Lim. p. 2, § 1; Id. p. 507, § 141; *Morewood* v. *Wakefield,* 133 Mass. 240; *Blair* v. *Forehand,* 100 Mass. 136; *State* v. *McDuffie,* 34 N. H. 523. The court is of the opinion that the ordinance relied upon is valid, and that it justified the defendant in killing plaintiff's dog while running at large without being registered according to its provisions.   Other errors are alleged on the record, but we do not think them well assigned. The judgment of the court below is affirmed.

ANDERSON, J., and BLACKBURN, J., concurred.