Frederick Fox, Respondent, *v.* The Mohawk and Hudson River Humane Society, Appellant.

| 165 | 517 |
| 171 | ¹265 |
| 165 | 517 |
| 173 | ²210 |

1. Constitutional Law — License Fees are Public Moneys — Appropriation to Private Corporation — Chapter 448, Laws of 1896, Unconstitutional.  Chapter 448 of the Laws of 1896, providing that every person who owns or harbors dogs within the limits of any city having a specified population in which there exists or may thereafter exist an incorporated society for the prevention of cruelty to animals, shall procure a yearly license for each animal and pay the sum of one dollar therefor to such society; that dogs not licensed according to the provisions of the act shall be seized, and if not redeemed within forty-eight hours, destroyed or otherwise disposed of at the discretion of the society, and that the license fees are to be used by the society towards defraying the costs of carrying out the provisions of the statute and maintaining a shelter for lost, strayed or homeless animals, "and for its own purposes," so far as it compels the owners of dogs to pay license fees to such society for the purposes prescribed therein is unconstitutional, since such license fees are public moneys within the meaning of the Constitution (Art. VIII, §§ 9, 10, 14), and their appropriation to a society, organized by the voluntary action of individuals alone, is a gift of public moneys to or in aid of an association, corporation or private undertaking.

2. Grant of an Exclusive Privilege and Immunity.  Since the statute for the incorporation of such societies permits the incorporation of but one society in a county, the act in question, so far as it empowers such society to appropriate, harbor and keep dogs without paying any license fee, while every other citizen is obliged to pay such license fee, is unconstitutional because it grants an exclusive privilege and immunity forbidden by the Constitution.  (Art. III, § 18.)

*Fox* v. *Mohawk & H. R. Humane Society*, 25 App. Div. 26, affirmed.

(Argued November 13, 1900;  decided February 5, 1901.)

Appeal from an order of the Appellate Division of the Supreme Court in the third judicial department, entered January 14, 1898, reversing a judgment in favor of defendant entered upon a dismissal of the complaint by the court on trial at Special Term, and granting a new trial.

The nature of the action and the facts, so far as material, are stated in the opinion.

*G. B. Wellington* for appellant.  Chapter 448 of the Laws of 1896 is a valid exercise of the police power of the state.

(Const. N. Y. art. 10, § 2; *Den ex dem.* v. *Hoboken Co.*, 18 How. [U. S.] 272; *Davidson* v. *Bd. Administrators*, 6 Otto, 97; *Stuart* v. *Palmer*, 74 N. Y. 193; *Lawton* v. *Steele*, 152 U. S. 133; 119 N. Y. 226; *Hart* v. *Mayor, etc.*, 9 Wend. 590; *Health Dept.* v. *Rector, etc., Trinity Church*, 145 N. Y. 32; *Dempsey* v. *N. Y. C. & H. R. R. R. Co.*, 146 N. Y. 290; *Astor* v. *Mayor, etc.*, 62 N. Y. 567; *Matter of Whiting*, 2 Barb. 513; *People ex rel.* v. *Bennett*, 54 Barb. 480.) The act in question is not invalid under article V, amendments to United States Constitution. (*Sentell* v. *N. O. & C. R. R. Co.*, 166 U. S. 698.) It is to be presumed that chapter 448, Laws of 1896, is constitutional. (*Sweet* v. *City of Syracuse*, 129 N. Y. 316; *Ex parte M'Collum*, 1 Cow. 550; *Rumsey* v. *People*, 19 N. Y. 55; *People ex rel.* v. *Albertson*, 55 N. Y. 50.) Chapter 448, Laws of 1896, does not impose a tax but only a license fee. (*Trustees, etc.*, v. *Roome*, 93 N. Y. 313; *People ex rel.* v. *Murray*, 149 N. Y. 367; *Sweet* v. *City of Syracuse*, 129 N. Y. 316.) Chapter 448, Laws of 1896, is not a private or local act. (*People ex rel.* v. *Sheriff Kings County*, 13 Misc. Rep. 587; *People ex rel.* v. *N. & S. P. R. Co.*, 86 N. Y. 1; *People ex rel.* v. *Murray*, 149 N. Y. 367; *People ex rel.* v. *Squire*, 107 N. Y. 593; *Burnham* v. *Acton*, 35 How. Pr. 48; *Heridia* v. *Ayres*, 12 Pick. 344; *S. M. Ins. Co.* v. *Mayor, etc.*, 8 N. Y. 253; *People ex rel.* v. *Briggs*, 50 N. Y. 553; *Astor* v. *A. Ry. Co.*, 113 N. Y. 93; *Van Brunt* v. *Town of Flatbush*, 128 N. Y. 50; *Sweet* v. *City of Syracuse*, 129 N. Y. 331.)

*David B. Hill* and *John L. Cadwalader* submitted (by leave of the court) a brief in behalf of several societies interested in the questions involved. The provision for the destruction of unlicensed dogs does not violate any clause of the Constitution. (*Lawton* v. *Steele*, 119 N. Y. 255; *Hart* v. *Mayor, etc.*, 9 Wend. 589; *Rockwell* v. *Nearing*, 35 N. Y. 308; *Santell* v. *N. O., etc., R. R. Co.*, 166 U. S. 704; *Happy* v. *Mosher*, 48 N. Y. 313; *Field* v. *City of Des Moines*, 18 Am. Rep. 46; *People ex rel.* v. *Com. Council*, 76

N. Y. 558; *Struve* v. *Droge*, 62 How. Pr. 233; *Russell* v. *Mayor, etc.*, 2 Den. 461; *Taylor* v. *Plymouth*, 8 Metc. 462.) The act of 1896 is not unconstitutional simply because it vests in the defendant society the execution of certain police powers of the state. (*People* v. *Morris*, 13 Wend. 334; 7 Am. & Eng. Ency. of Law [2d ed.], 637; *M. D. Co.* v. *Zellerbach*, 99 Am. Dec. 300; *Seneca Nation* v. *John*, 16 N. Y. Supp. 40; *Railroad Comrs.* v. *P. & O. C. R. Co.*, 18 Am. Rep. 211; *Foster* v. *Fowler*, 60 Penn. St. 27; *Inhabitants of Rumford* v. *Wood*, 13 Mass. 197; *Grant* v. *Fancher*, 5 Cow. 309.)

*J. S. Frost* and *L. C. Warner* for respondent. The act in question is in violation of article 5 and article 14, section 1, of the amendments to the Constitution of the United States, and of article 1, section 6, of the Constitution of the state of New York, as it deprives persons of their property without due process of law and without just compensation. (*Rockwell* v. *Nearing*, 35 N. Y. 305; *People ex rel.* v. *Tighe*, 9 Misc. Rep. 607; *Kinge* v. *Hayes*, 80 Me. 206; *Shaw* v. *Kennedy*, 2 Taylor [N. C.], 158; *Varden* v. *Mount*, 78 Ky. 86; *Mullaly* v. *People*, 86 N. Y. 365; *Mayor, etc.*, v. *Meigs*, 1 MacArthur, 53; *Archer* v. *Baertschi*, 8 Ohio C. C. 12; *Lynn* v. *State*, 33 Tex. Crim. Rep. 153.) The law is unconstitutional for the reason that it authorizes the exercise of a power of taxation not recognized by the Constitution. (*Stuart* v. *Palmer*, 74 N. Y. 183; *Turner* v. *Althaus*, 6 Neb. 54; Desty on Taxn. 305; *San Francisco* v. *L., etc., Ins. Co.*, 74 Cal. 113; *H. Ins. Co.* v. *Augusta*, 50 Ga. 530; Cooley on Taxn. 572; *People ex rel.* v. *Murray*, 149 N. Y. 377; *P. T. C. Co.* v. *Charleston*, 153 U. S. 692; *Weismer* v. *Vil. of Douglas*, 64 N. Y. 91; *Philadelphia Assn.* v. *Wood*, 39 Penn. St. 82; *Loan Assn.* v. *Topeka*, 20 Wall. 663; *People ex rel.* v. *Flagg*, 46 N. Y. 401.) This act cannot be upheld under the police power of the state. (*People* v. *Smith*, 108 Mich. 527; *Austin* v. *Murray*, 16 Pick. 121.) The act is in the nature of a gratuity rather than within the police power. (*People* v. *Gillson*, 109 N. Y. 389; *Bush* v. *Bd. of Suprs.*, 10 App. Div. 542.)

Cullen, J.    This action was brought to restrain the defend-ant from killing, disposing of or interfering with the plain-tiff's dogs, he having refused to pay the license fee prescribed by chapter 448, Laws of 1896, entitled " An act for the pre-vention of cruelty to animals and empowering certain societies for the prevention of cruelty to animals to do certain things." The defendant was formed by the consolidation of a society for the prevention of cruelty to children with one for the pre-vention of cruelty to animals and was vested with all the powers of each association.    (Chap. 292, Laws of 1894.)    The defendant in its answer pleaded its corporate organization and its power and authority under the statute of 1896, and upon the trial admitted its intent to seize the plaintiff's dogs for non-payment of license fees.    The sole question involved in the case is the constitutionality of the provisions of this stat-ute.    No objection has been made to the mode of procedure adopted, nor to the plaintiff's right to maintain the action and we shall raise none.    The court at Special Term held the stat-ute valid and rendered judgment for the defendant.    The Appellate Division reversed the judgment below and granted a new trial, and from the order of reversal the defendant has appealed to this court.

The statute of 1896 provides that every person who owns or harbors dogs within the limits of any city having a specified population, in which there exists, or may thereafter exist, an incorporated society for the prevention of cruelty to animals, shall procure a yearly license for each animal and pay the sum of one dollar therefor to such society.    Dogs not licensed, according to the provisions of the act, shall be seized and, if not redeemed within forty-eight hours, destroyed or otherwise disposed of at the discretion of the society.    The license fees are to be used by the society towards defraying the cost of carrying out the provisions of the statute and maintaining a shelter for lost, strayed or homeless animals, " and for its own purposes."    The learned Appellate Division held this legisla-tion void on two grounds : *First*, that the direction for the summary destruction or appropriation of the dog without notice

to the owner was taking the property of such owner without
due process of law.   *Second*, that the act assumed to vest in
the defendant, a private corporation, the execution of certain
police powers of the state, and, in effect, to constitute it a pub-
lic officer.   We are of opinion that the decision below cannot
be upheld on either of these grounds.   Under any circum-
stances, there is but a qualified property in dogs, cats and simi-
lar animals, and, in fact, there may be said to be no property
in them as against the police power of the state.   In *Sentell*
v. *New Orleans & C. R. R. Co.* (166 U. S. 698) the Supreme
Court of the United States upheld the constitutionality of a
statute of the state of Louisiana which provided that no
dog should be entitled to the protection of the law unless
it should have been placed on the assessment rolls, and that
the owner should not recover for injuries done to the dog
in any civil action beyond the value fixed by him on the
assessment roll, which statute was challenged as depriving
the owner of property without due process of law in contra-
vention of the 14th amendment of the Federal Constitution.
In the opinion there delivered will be found a review of the
common law on the subject of dogs and of the legislation of
the various states and the decisions of the state courts on the
same subject.   Such legislation and decisions are in substan-
tial harmony.   In *Blair* v. *Forehand* (100 Mass. 136) a stat-
ute authorizing the summary destruction of dogs not licensed
and collared according to the provisions of the statute, was
held valid and constitutional.   It was there said : " Dogs have
always been held by the American courts to be entitled to less
legal regard and protection than more harmless and useful
domestic animals."   In *Morewood* v. *Wakefield* (133 Mass.
240) a statute which authorized any person to kill a dog which
had no collar on, even though licensed, was upheld.   The
decisions in *Morey* v. *Brown* (42 N. H. 373); *Tenney* v. *Lenz*
(16 Wis. 566); *Mitchell* v. *Williams* (27 Ind. 62); *Ex parte
Cooper* (3 Tex. App. 489); *Jenkins* v. *Ballantyne* (8 Utah,
245), are to the same effect.   Nor is the rule in this state dif-
ferent.   In *Mullaly* v. *People* (86 N. Y. 365) it was held that

dogs are the subject of larceny, the decision proceeding on the
ground that the Revised Statutes had changed the common-law
rule to the contrary and recognized dogs as property by pro-
viding for their taxation.   But the proposition that there is
property in a dog as against a wrongdoer, is very different
from the proposition that an owner has the same right of
property in a dog as against the police power of the state
which he has in useful domestic animals.   The same title of
the Revised Statutes that directed the taxation of dogs (Title
17, chap. 20, part 1) authorized any person to kill a dog so
taxed unless the tax was paid within five days after demand
(§ 6) or any dog which he might see chasing, worrying or
wounding any sheep.   (§ 15.)   This last provision was but a
re-enactment of previous legislation.   (1 R. L. 169, §§ 1 and
7.)   Summary confiscation of this character, without judicial
process, would, in the case of domestic animals such as horses,
oxen and the like, even though those animals were trespass-
ing, be unconstitutional (*Rockwell* v. *Nearing*, 35 N. Y.
302); but the legislation regarding dogs, though it has
stood on the statute books for nearly a century, has never been
questioned.   Nor if the statute is not condemned for other
reasons do we think it presents a case of the delegation of
governmental power to a private corporation.   As unlicensed
dogs have been so long subject to destruction by every person,
the authority given to the officers or agents of the defendant
to kill such dogs is neither greater nor less than that conferred
on other citizens.

We think, however, that the statute is unconstitutional so
far as it requires the owner of a dog to pay a license fee to the
defendant for its own use.   In *People ex rel. Einsfeld* v.
*Murray* (149 N. Y. 374) the question was as to the validity
of the Liquor Tax Law, which was assailed as directing an
appropriation of public money for local purposes, and as not
having been passed by a two-thirds vote of the legislature, as
required by section 20, art. III of the Constitution of the
state.   The statute was upheld on the ground that the term
" public money " was used in this section of the Constitution

in the narrow restricted sense of meaning money of the state at large in contradistinction from moneys raised for local governmental purposes. Judge Andrews in delivering the opinion in that case wrote of license fees: "In a strict and accurate sense they were public moneys. No exaction can be lawfully made of a citizen by way of tax, impost or excise, except under authority of the Legislature, and the product of such imposition is public money." The correctness of this doctrine is too clear to be questioned. The appropriation of public money for other than strictly governmental purposes and its expenditure through other than official channels, have been most carefully limited by article VIII of the Constitution. By section 9 it is prescribed: "Neither the credit nor the money of the state shall be given or loaned to or in aid of any association, corporation or private undertaking. This section shall not, however, prevent the legislature from making such provision for the education and support of the blind, the deaf and dumb, and juvenile delinquents, as to it may seem proper." By section 10, "No county, city, town or village shall hereafter give any money or property, or loan its money or credit to or in aid of any individual, association or corporation. * * * This section shall not prevent such county, city, town or village from making such provision for the aid or support of its poor as may be authorized by law." Section 14 provides: "Nothing in this Constitution contained shall prevent the Legislature from making such provision for the education and support of the blind, the deaf and dumb, and juvenile delinquents, as to it may seem proper; or prevent any county, city, town or village from providing for the care, support, maintenance and secular education, of inmates of orphan asylums, homes for dependent children or correctional institutions, whether under public or private control. Payments by counties, cities, towns and villages" for these purposes "may be authorized, but shall not be required by the Legislature." By this comprehensive enumeration of money of the state, of a county, city, town and village, it is plain that the Constitution meant to include

all public moneys which are raised in any manner throughout
the state as an exaction from the citizen by the taxing or
licensing power of government.    Pecuniary penalties for
offenses are not imposed under either the taxing or licensing
power of the state, and probably would not fall within these
constitutional restrictions as to public money.    So little vested
right of property is there in a penalty that in a civil case it
may be taken away by the repeal of the statute at any time
before judgment (Cooley's Constitutional Limitations, p. 383 ;
*People ex rel. Fleming* v. *Livingston,* 6 Wendell, 526) and
in criminal cases also by pardon.    Authority to apply public
moneys for educational purposes is given in other sections of
the Constitution.    If the appropriation to the defendant of
license fees prescribed by this statute is a gift of money to, or
in aid of an association, corporation or private undertaking,
then it is in conflict with the constitutional provision cited.    It
is not necessary to determine whether these license fees are to
be regarded as the money of the city or the money of the state.
If money of the city, only permissive legislation empowering
its appropriation is authorized by the Constitution ; if it
is the money of the state, it does not come within the
exception to the constitutional inhibition, to wit, " Pro-
vision for the education and support of the blind, the deaf
and dumb and juvenile delinquents."    It is contended, how-
ever, that the defendant, though a corporation organized by
the voluntary acts of individuals, is a " subordinate govern-
mental agency," and that an appropriation of money to its use
is but an appropriation of money for the support of the gov-
ernment and not within the constitutional restrictions.    If it
were necessary for the disposition of this case, agreeing with
the view of the learned Appellate Division I certainly should
deny the right of the legislature to vest in private associations
or corporations authority and power affecting the life, liberty
and property of the citizens, except that of eminent domain, to
be exercised for a public purpose and the management and con-
trol of reformatory institutions to which persons may be com-
mitted by the judicial or other public authorities.    There may

be other exceptions, but they do not occur to me. Of course, the state or any of its subdivisions may employ individuals or corporations to do work or render service for it; but the distinction between a public officer and a public employee or contractor is plain and well recognized. (*People ex rel. Percival* v. *Cram*, 164 N. Y. 167; Meechem on Public Officers, § 2.) I do not base my judgment exclusively on the view that a corporation cannot take an oath of office, for the acts of the corporation must be done by agents who are natural persons. In many cases the legislature has created corporations from boards of public officers. My chief objection is that the corporations are private in the sense that they proceed from the voluntary action of individual citizens alone (in many cases it is not necessary that the members of the corporation should be citizens), that the agents or officers of the corporation are appointed such by the corporators and that if such agents are invested by virtue of their agency alone with the power of public officers, it is in substance devolving the choice of public offices on a few of the citizens, and possibly persons not citizens, while under the Constitution, all public officers must be elected or appointed by other public authorities and thus trace their title to power and authority either immediately or mediately back to the people. (See *Ames* v. *Port Huron, etc., Co.*, 11 Mich. 139; *State* v. *Kennon*, 7 Ohio St. 547; *State ex rel. Clark* v. *Stanley*, 66 N. Carolina, 59.) But if we assume that the legislature can create and has created this defendant "a subordinate governmental agency" to assist in the enforcement of the criminal laws relative to cruelty to animals, still that assumption will not establish the proposition that the devotion of these license fees is to a governmental purpose. It cannot be said to be compensation for services done in the destruction of the dogs, for the amount of money received is in inverse proportion to the services rendered. If licenses were taken out for all the dogs, there would be no dogs to be killed and the defendant would receive the money without service. While, if none of the dogs was licensed, all would be subject to destruction and the defendant would obtain

nothing for its services. But the defendant is not required
to kill unlicensed dogs. It may dispose of them as it sees
fit, and, therefore, retain them. It is empowered by the stat-
ute to apply the license moneys to maintaining a shelter for
lost, strayed or homeless animals, which would include the very
dogs seized for non-payment of the license. I cannot see why
under this statute the defendant may not maintain a kennel
of the largest description in which to retain dogs for its
pleasure or from which to sell dogs for its profit. It seems to
me idle to argue that such a work is governmental or that a
corporation engaged in discharging it is *pro tanto* " a subor-
dinate governmental agency." It is contended that the statute
was enacted to exterminate homeless, wandering or diseased
dogs, which may be a source of great danger to life and health.
If the statute prescribed action appropriate to effect such
result, the work directed to be done in pursuance of it might
be well termed governmental and a very different question
presented. The legislation before us we think destitute of
any such feature. It is but an exaction of money or prop-
erty from one citizen and its appropriation to another for its
private use. Such is not a valid exercise of taxing power.
(Cooley on Taxation, 572 ; *Weismer* v. *Village of Douglas*,
64 N. Y. 91 ; *Loan Association* v. *Topeka*, 20 Wall. 655.)
We are of opinion, therefore, that the statute, so far as it com-
pels the owners of dogs to pay license fees to the defendant
for the purposes prescribed in the statute, is an unauthorized
appropriation of public moneys, and is in conflict with the
Constitution.

We are of further opinion that the statute, so far as it
empowers the defendant to appropriate, harbor and keep dogs
without paying any license fee, while every other citizen is
obliged to pay such license fee, is the grant of an exclusive
privilege and immunity forbidden by section 18, article III of
the Constitution. The law for the incorporation of societies
of the character of this defendant permits the incorporation
of but one society in a county. Therefore, the defendant is
the only person, natural or artificial, who can keep dogs

without paying a license. Doubtless the legislature might discriminate between different breeds of dogs and provide that certain breeds should not be harbored within the state, while others it could suffer to be kept. It might subject the keeping of dogs to restrictions which, by reason of their conditions, might in practice discriminate as to the right to keep dogs. If this classification was fairly adapted to the destruction of vicious dogs or dogs of a vicious breed, or to keeping dogs under such conditions as to prevent their endangering the persons or health of the members of the community, it would be a valid exercise of the police power and justifiable. But under the law before us no distinction is made between the breeds or individual characters of dogs, nor as to the manner in which dogs may be restrained and kept. The defendant can keep any dog it sees fit, and is not required to pay anything for the privilege. No one else in the community can keep a dog without paying a dollar a year for the privilege, to say nothing of the fact that he is compelled to pay that dollar to the defendant. We think this an exclusive privilege condemned by the Constitution.

The views we have expressed are not inconsistent with the recent decision in this court in *People ex rel. State Bd. Charities* v. *New York Society for the Prevention of Cruelty to Children* (161 N. Y. 233). In that case the only question before the court was whether the defendant was an institution of "charitable, eleemosynary, correctional or reformatory" character within the nomenclature of section II, article VIII of the Constitution, and, therefore, subject to the visitation of the state board of charities, a question not at all involved in this case. Nor is the result reached in conflict with the decision in *Trustees of Exempt Firemen's Benevolent Fund* v. *Roome* (93 N. Y. 313), in which the validity of an appropriation of a percentage of the premiums received by foreign fire insurance companies to the relief of exempt firemen was upheld. The decision in that case proceeded on the ground that the volunteer fire department for more than a hundred years had been a recognized agency of the munic-

ipal government, and that an appropriation of money to the benevolent fund of the firemen was but a recognition of the obligation due from the state to the members of the department for their services.    Judge Finch there said : " The precise relation of these firemen to the municipality and the state it is not easy to describe.    They were not civil or public officers within the constitutional meaning (*People* v. *Pinckney*, 32 N. Y. 392), and yet must be regarded as the agents of the municipal corporation.    Their duties were public duties ; the service they rendered was a public service ; their appointment came from the common council and was evidenced by the certificate of the city officers ; they were liable to removal by the authority which appointed them ; and were intrusted with the care and management of the apparatus owned by the city. They were, at least, a public body, and, perhaps, are best described as a subordinate governmental agency."    It must be admitted that the status of these firemen was somewhat anomalous, and the description formulated by Judge Finch, " subordinate governmental agency," was doubtless the best characterization of it.    But the case must not be considered as authority for the doctrine that the administration of government generally can be confided to " subordinate governmental agencies " in the shape of corporations or associations.    One vital distinction between the fire department and the defendant is this : As to the former, membership in the department as well as its discipline and management were at all times subject to the control and regulation of the common council of the city ; while membership in the defendant may be accorded or withheld at its pleasure, and the management of the corporation and the selection of its officers is wholly vested in the corporators.

The order granting a new trial should be affirmed and judgment absolute rendered for plaintiff on the stipulation, with costs.

Parker, Ch. J., O'Brien, Haight and Werner, JJ., concur ; Gray, J., concurs on second ground stated in opinion . Landon, J., not sitting.

Ordered accordingly.