(86 Misc. Rep. 246)

.PEOPLE v. CALL.

.(Supreme Court, Special Term, Fulton County. June, 1914.)

1. GAME (§ 4*) — ADIRONDACK PARK — EXCLUSION OF DOGS — LEGISLATIVE
POWER.
   The enactment of Conservation Law (Consol. Laws, c. 65; Laws 1911,
c. 647) § 193, as added by Laws 1912, c. 318, which prohibits the keeping
or possession of dogs in the Adirondack Park and requires every game
protector to kill any dog found therein, was within the legislative power.
   [Ed. Note.—For other cases, see Game, Cent. Dig. § 3; Dec. Dig. § 4.*]

2. GAME (§ 8*)—ADIRONDACK PARK—REGULATIONS—VIOLATION—RECOVERY OF
PENALTY—COMPLAINT.
   Under Laws 1912, c. 444, § 109, subd. 2, the Adirondack Park is not
limited to the lands "now owned or hereafter acquired by the state within
the boundaries described in section 51, but includes all lands, both state
and private, located in the forest preserve counties of the Adirondacks
within such boundaries; and hence the complaint, in an action to re-
cover a penalty for a violation of Conservation Law (Consol. Laws, c.
65; Laws 1911, c. 647) § 193, as added by Laws 1912, c. 318, prohibiting
the keeping or possession of dogs in the Adirondack Park, stated a cause
of action, where it alleged that defendant unlawfully kept and possessed
a dog which he permitted to run at large in the public highway of a town
within the Adirondack Park.
   [Ed. Note.—For other cases, see Game, Cent. Dig. § 8; Dec. Dig. § 8.*]

3. ANIMALS (§ 2*)—DOGS—PROPERTY RIGHTS.
   Property in dogs is of an imperfect or qualified nature, and subject to
the will of the Legislature.
   [Ed. Note.—For other cases, see Animals, Cent. Dig. §§ 1–4; Dec. Dig.
§ 2.*]

Action by the People against Edgar Call. Demurrer ·to complaint
overruled.

Thomas Carmody, Atty. Gen., and Benjamin McClung, and Valen-
tine Taylor, Deputy Attys. Gen., for the People.

T. Almern Griffin, of Albany (Ellis J. Staley, of Albany, of counsel),
for defendant.

WHITMYER, J.   [1] This action has been brought to recover a
penalty for a violation of section 193 of the Conservation Law.   It is
claimed that the defendant, on or about March 1, 1913, wrongfully and
unlawfully kept and possessed a dog which he owned or harbored and
permitted to run at large in the public highway in the town of Lake
Pleasant, Hamilton county, in this state, within the Adirondack Park,
as defined by section 51, chapter 444, Laws of 1912, in violation of the
provisions of said section 193.   Defendant has demurred on the ground
that the complaint does not state facts sufficient to constitute a cause
of action.   By demurring he admits the facts.   He claims, however, that
the facts alleged do not constitute a violation of that portion of the sec-
tion which is in question here, and, if they do, that the section to that
extent is unconstitutional on the ground that it permits the taking of
private property for public use without just compensation.

The section is one of chapter 318, Laws of 1912, in effect April 15,

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

1912, and is now section 193 of the Conservation Law. It is as follows:

"Dogs to be Killed. Dogs shall not be permitted by the owner or persons harboring the same to run at large in or to be taken into forests inhabited by deer or kept or possessed in the Adirondack Park. If any dog or bitch be in the forest preserve or found hunting, pursuing or killing deer or running at large in forests inhabited by deer, it shall be presumptive evidence of a violation of this section by the person owning, using, having or harboring such dog or bitch. Any person may, and it shall be the duty of every game protector to kill any dog or bitch found in the Adirondack Park or in a deer forest, or pursuing deer and no action for damages shall be maintained against a person for such killing. No dog or bitch shall be taken into or harbored in any hunting or lumber camp within the forest preserve."

Its source is section 9, chapter 20, Laws of 1900, the former Forest, Fish and Game Law, which was as follows:

"Hounding, Dogs to be Killed. Deer shall not be hunted, pursued or killed with any dog or bitch before August fifteenth, nineteen hundred and two. Dogs that are trained to or will pursue deer, shall not be permitted by the owner or person harboring the same to run at large in or to be taken into forest inhabited by deer before said date. If any such dog or bitch be found hunting, pursuing or killing deer or running at large in forests inhabited by deer, it shall be presumptive evidence of a violation of this section by the person owning, using, having or harboring such dog or bitch. Any person may, and it is the duty of every game protector to kill a dog or bitch found in a deer forest, and no action for damage shall be maintained against a person for such killing."

[2] That section was amended by section 9, chapter 545, Laws of 1901. The dates fixed in the first and second sentences were stricken out by the amendment and the second and last sentences were amended to read as follows:

"Dogs of the breed commonly used for hunting deer, or dogs that are trained to, or will pursue deer, shall not be permitted by the owner or persons harboring the same to run at large in or to be taken in the forest inhabited by deer or kept or possessed in the Adirondack Park. * * * Any person may, and it is the duty of every game protector to kill a dog or bitch found in the Adirondack Park or in a deer forest, or pursuing deer and no action for damages shall be maintained against a person for such killing."

The section otherwise was not changed. No further amendments were made until the passage of chapter 24, Laws of 1909 (Consol. Laws, c. 19), when section 9 was changed to section 79 of the law. By that section, the second sentence, as it was before that time, was amended so as to read, "dogs shall not be permitted by the owner or persons harboring the same to run at large in or to be taken into forests inhabited by deer or kept or possessed in the Adirondack Park," and the third was amended by inserting the words, "in the forest preserve or" after the words, "if any dog or bitch be" and before the words, "found hunting," so as to read, "if any dog or bitch be in the forest preserve, or found hunting," and an additional sentence was added, as follows: "No dog or bitch shall be taken into or harbored in any hunting or lumber camp within the forest preserve." Section 79 thereafter became section 193 of the Conservation Law, without change, excepting that the word "hounding" has been omitted from the heading, and that the first sentence has been entirely omitted. As already stated, section 193

went into effect April 15, 1912. Up to that time the Adirondack Park had been defined as follows:

"The Adirondack Park shall include all lands now owned or hereafter acquired by the state, within the following bounds, to wit: Beginning. * * * Such park shall forever be reserved and maintained for the free use of all the people." Laws of 1900, c. 20, § 217; Laws of 1908, c. 130, § 35; Laws of 1909, c. 24, § 35.

Hamilton county was included within its bounds. A change, however, was made by section 51, c. 444, Laws of 1912. That went into effect April 16, 1912. It was there defined as follows:

"All lands located in the forest preserve counties of the Adirondacks within the following described boundaries, to wit: Beginning. * * * All lands within such park now owned, or which may hereafter be acquired by the state, shall be forever reserved and maintained for the use of all the people."

The boundaries were not changed. The forest preserve counties are those in which any lands therein, if acquired by the state, will become a part of the forest preserve. Laws of 1912, c. 444, § 109, subd. 1. And the forest preserve includes "the lands now owned or hereafter acquired by the state" within the forest preserve counties, 16 in number, including the county of Hamilton, excepting lands within the limits of any village or city and lands not wild lands acquired by the state on foreclosure of mortgages made to loan commissioners. Laws of 1912, c. 444, § 50. No change has ever been made in the definition of the forest preserve. Laws of 1900, c. 20, § 216; Laws of 1908, c. 130, § 34; Laws of 1909, c. 24, § 34; Laws of 1912, c. 444, § 50. As now defined, the park is not limited to the lands "now owned or hereafter acquired by the state" within the boundaries described in section 51, c. 444, Laws of 1912, but has been extended so as to include "all lands located in the forest preserve counties of the Adirondacks" within said boundaries. It includes all lands, both state and private, within said bounds. Laws of 1912, c. 444, § 109, subd. 2. But the lands owned or hereafter to be acquired by the state are to be forever reserved and maintained for the use of all the people in the same way as before. No change has been made in that respect. So that private lands have not been appropriated for public use by the extension of the park, but the effect has been, so far as this case is concerned, that the boundaries within which dogs shall not be kept or possessed have been extended so as to include private lands within the park. Now section 193, so far as material, provides that "dogs shall not be * * * kept or possessed in the Adirondack Park," and that "it shall be the duty of every game protector to kill any dog or bitch found in the Adirondack Park." This language is clear and unambiguous, and does not require interpretation. It does not except any dogs or any places in the park, but includes all dogs and every part of the park. That, clearly, was the intention, and that is the effect which must be given to the language, unless the provision is plainly unconstitutional.

[3] Dogs are not considered as being upon the same plane with horses, cattle, sheep, and other domesticated animals, but rather in the category of cats, monkeys, parrots, and similar animals kept for pleasure, curiosity, or caprice. Property in them is of an imperfect or qual-

ified nature. They have always been considered as holding their lives at the will of the Legislature and properly falling within the police power of the several states. Sentell v. New Orleans & C. R. Co., 166 U. S. 698, 17 Sup. Ct. 693, 41 L. Ed. 1169; Fox v. Mohawk & H. R. Humane Society, 165 N. Y. 517, 59 N. E. 353, 51 L. R. A. 681, 80 Am. St. Rep. 767. In the Sentell Case it was decided that a statute of the state of Louisiana, which provided that no dog should be entitled to the protection of the law if not placed on the assessment roll, and that the owner should not recover for injuries done to the dog beyond the value fixed by him on the roll, was constitutional. Referring to the regulations of the statute, the court says:

"While these regulations are more than ordinarily stringent, and might be declared to be unconstitutional, if applied to domestic animals generally, there is nothing in them of which the owner of a dog has any legal right to complain. It is purely within the discretion of the Legislature to say how far dogs shall be recognized as property, and under what restrictions they shall be permitted to roam the streets."

The common law on the subject is reviewed in the opinion in that case, as are the statutes of various states and the decisions. That review shows that statutes similar to the one there in question, though frequently attacked, have been generally, if not universally, upheld. Blair v. Forehand, 100 Mass. 136, 97 Am. Dec. 82, 1 Am. Rep. 94; Morewood v. Wakefield, 133 Mass. 240; Morey v. Brown, 42 N. H. 373; Tenney v. Lenz, 16 Wis. 566; Mitchell v. Williams, 27 Ind. 62; Ex parte Cooper, 3 Tex. App. 489, 30 Am. Rep. 152; Jenkins v. Ballantyne, 8 Utah, 245, 30 Pac. 760, 16 L. R. A. 689. In Blair v. Forehand, supra, it was held that a statute declaring that any person might, and every police officer and constable should, kill or cause to be killed all dogs whenever and wherever found, not licensed and collared according to other provisions of the statute, was within the constitutional limits of the authority of the Legislature. And the opinion in that case shows that laws have existed, sometimes for the killing of "unruly and ravenous dogs," sometimes, as in Nantucket in 1743, for the killing of "any dog or bitch whatsoever that shall at any time be found there," and sometimes for the killing of dogs "strolling out of the inclosure or immediate care of the owner," or going at large without a collar, all of which have been held to be valid. In Morewood v. Wakefield, supra, a statute authorizing any person to kill a dog, which was licensed, but had no collar on, was upheld. In Jenkins v. Ballantyne, supra, the provisions of a city charter, which authorized the city to tax, regulate, or prohibit the keeping of dogs and to authorize their destruction, when at large, contrary to the ordinance, were upheld. The other cases cited are to the same effect. And the rule is the same in this state. Fox v. Mohawk & H. R. Humane Society, supra. The Fox Case involved the constitutionality of a statute providing for the killing of unlicensed dogs. The opinion was by Judge Cullen. He said:

"Under any circumstances, there is but a qualified property in dogs, cats and similar animals, and, in fact, there may be said to be no property in them as against the police power of the state."

The case of Mullaly v. People, 86 N. Y. 365, was distinguished. It was there held that dogs are the subject of larceny. After noting that

that decision was on the ground that the Revised Statutes had changed the common-law rule to the contrary and recognized dogs as property, by providing for their taxation, Judge Cullen said:

"But the proposition that there is property in a dog as against a wrong-doer, is very different from the proposition that an owner has the same right of property in a dog as against the police power of the state which he has in useful domestic animals."

Moreover, even if it were assumed that dogs are property, they would still be subject to the police power. Justice Brown, writing in the Sentell Case, supra, says:

"Even if it were assumed that dogs are property in the fullest sense of the word, they would still be subject to the police power of the state, and might be destroyed or otherwise dealt with, as in the judgment of the Legislature is necessary for the protection of its citizens. That a state, in a bona fide exercise of its police power, may interfere with private property, and even order its destruction, is as well settled as any legislative power can be, which has for its objects the welfare and comfort of the citizen."

After citing instances where the power has been exercised, the opinion continues:

"It is true that under the fourteenth amendment no state can deprive a person of his life, liberty, or property without due process of law; but in determining what is due process of law we are bound to consider the nature of the property, the necessity for its sacrifice, and the extent to which it has heretofore been regarded as within the police power."

Conservation of its natural resources has been the policy of the state for years. The forest preserve and the Adirondack Park have been created. The preserve includes the lands owned by the state within the forest preserve counties, except lands within the limits of any village or city. The park includes all lands within said counties within certain defined boundaries. It includes all lands, both state and private, within said boundaries. The lands therein owned or hereafter to be acquired by the state are to be forever reserved and maintained for the use of all the people. Private lands therein are not to be so reserved and maintained. The park comprises 1,500,000 acres, includes some 15 or 16 villages, and has a population of about 20,000. Laws have been passed relating to the preserve and to the park, to prevent, among other things, the destruction of the forests owned by the state and the extinction of game. The one in question prohibits the keeping or possession of dogs in the park and requires every game protector to kill any found therein. It is not confined, as it formerly was, to dogs of certain kinds or breeds, nor is it confined to lands within the park owned by the state, but it includes all dogs and every place in the park. It seems to be conceded that the Legislature could have passed a law prohibiting the keeping or possession of dogs of every kind or breed on lands within the park owned by the state, but it is claimed that it could not so do, so far as private lands therein are concerned, and it is urged that the prohibition should be construed as relating only to the state lands therein. Such a construction, however, would be forced because the language is clear and unambiguous and does not require construction. The various changes in the law show the efforts made from time to time to limit it in its operation. They also show that each change resulted in evasion

of the law. Finally, to make it effective, it was passed in the form in which it now is. Within the cases cited, this was within the power of the Legislature. If experience shall show that so inclusive a law is unnecessary, the Legislature may and should modify it, since that body is responsible. As it is, the court should not nullify it by a construction, which the language will not permit.

The demurrer, therefore, should be overruled.

Demurrer overruled.