WILLIAM N. DEADY, Respondent, *v.* THE VILLAGE OF LYONS, Appellant.

*Illegal tax, recovered in an action for money had and received — an expenditure by a village to retain a county court house is not a proper "extraordinary expenditure" — it is unconstitutional.*

An expenditure of money by a village for the purpose of retaining a county court house therein, and preventing its removal to another village, is not an "extraordinary expenditure" within the meaning of section 1 of title 4 of chapter 291 of the Laws of 1870. Even were such an expenditure authorized by that act, it would be in violation of section 10 of article 8 of the Constitution of the State of New York, providing that "no county, city, town or village shall hereafter give any money or property, or loan its money or credit to, or in aid of, any individual, association or corporation" — the prohibition contained in that section including gifts to public as well as to private corporations.

*Semble,* that chapter 308 of the Laws of 1884 does not give to the village of Lyons the powers conferred by the General Village Act (Chap. 291, Laws of 1870) to raise money for extraordinary expenditures.

Money paid by a village taxpayer, under a warrant issued against him for the collection of a tax under an illegal assessment and a levy and sale thereunder, may be recovered in an action against the village for money had and received.

APPEAL by the defendant, The Village of Lyons, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Wayne on the 1st day of September, 1898, upon the report of a referee.

*Thad. Collins, Jr.,* for the appellant.

*J. Stuart Page,* for the respondent.

HARDIN, P. J.:

Defendant, Village of Lyons, contains the county seat of Wayne county, and the usual county buildings are there located. In the winter of 1896 the village of Newark, in that county, instituted a vigilant effort to induce the board of supervisors to change the county seat to the village of Newark. An order had been made by a justice of the Supreme Court requiring the repair of the county buildings in the defendant village. To defeat the efforts of the village of Newark to secure a change of the county seat, the public-spirited citizens in the village of Lyons offered to the board of

supervisors a sum of money supposed to be adequate to make the repairs to the county buildings situated in Lyons, and, on the 23d day of April, 1897, the trustees of the village of Lyons passed a resolution authorizing the levying upon the taxable property of the village the sum of $17,500 for the purpose of aiding and assisting the board of supervisors of the county of Wayne in defraying the expense of making additions to and repairs upon the court house in the said county of Wayne. A special election was called in the village and the resolution was approved by a large majority of the popular vote that was rendered on that occasion. Thereupon the machinery for taxation was set in motion and the amount of tax assessed against the plaintiff was $71.03, and a warrant was issued for the collection of the tax, which the plaintiff refused to pay, whereupon a levy was made upon his property in virtue of the warrant and a sale was had on December 23, 1897, and under the duress of the levy the plaintiff was obliged to pay, and did pay, $82.63 to satisfy the tax. It is apparent that the proceeds of the special tax were turned over to the board of trustees to reimburse parties who had advanced money on certain notes, the proceeds of which notes were used for the purpose of inducing the board of supervisors to omit to remove the county seat, and for the purpose of enabling the board of supervisors to use such money in the reparation, alterations and changes made to the county buildings.

This action was commenced on January 17, 1898, for money had and received, and after a trial before the referee he found the facts favorable to, and the conclusions of law thereon, in favor of the plaintiff.

(1) The illegality of the assessment and tax are clearly demonstrated by the opinion of the learned referee in language that needs no addition thereto nor subtraction therefrom.*

---

\* The following is the opinion of the referee:

Henry W. Conklin, Referee:

A municipal corporation, like a business corporation, is the creature of the State and possesses only such powers as are given it by its creator. This elementary principle is stated by Cooley (Const. Lim. [6th ed.] 227) as follows: "The charter, or the general law under which they exercise their powers, is their constitution in which they must be able to show authority for the acts they assume to perform. They have no inherent jurisdiction to make laws or adopt regulations of government; they are governments of enumerated powers, acting

(2) The tax being void, the amount paid may be recovered in an action for money had and received. (*Bruecher* v. *Village of Port Chester*, 101 N. Y. 240; *Jex* v. *Mayor*, 103 id. 536; *Ætna Ins. Co.* v. *The Mayor*, 153 id. 339.) In the latter case the learned judge who delivered the opinion said: "The tax being void, the

---

by a delegated authority, so that while the State legislature may exercise such powers of government, coming within a proper designation of legislative power, as are not expressly or impliedly prohibited, the local authorities can exercise those only which are expressly or impliedly conferred and subject to such regulations or restrictions as are annexed to the grant."

The powers so granted must be strictly construed.

"It is a general and undisputed proposition of law that a municipal corporation possesses and can exercise the following powers and no others: *First*, those granted in express words; *second*, those necessarily or fairly implied in or incident to the powers expressly granted; *third*, those essential to the declared objects and purposes cf the corporation, not simply convenient, but indispensable. Any fair, reasonable doubt concerning the existence of power is resolved by the courts against the corporation, and the power is denied. Of every municipal corporation, the charter or statute by which it is created is its organic act. Neither the corporation nor its officers can do any act, or make any contract, or incur any liability, not authorized thereby, or by some legislative act applicable thereto. All acts beyond the scope of the powers granted are void." (Dillon Mun. Corp. [4th ed.] § 89.)

The charter of the village of Lyons is embodied in chapter 388, Laws of 1854, as modified or supplemented by the General Village Act. (Laws of 1870, chap. 291.)

In the act of 1854 the power of taxation is regulated as follows:

"§ 24. The village of Lyons shall have power, and is hereby authorized in the manner prescribed by this act, to raise by general tax, to be assessed upon all the property in said village which now is or hereafter shall be liable to taxation for county purposes (except such property as shall by this act be exempted from taxation), all sums which shall be necessary for the following objects, *and no other*."

Then follows an enumeration of certain objects, each of which has a plain relation to some well-recognized municipal purpose, and none of which includes the purpose in question in this case.

It is urged by the defendant that, by chapter 308, Laws of 1884, the powers conferred by the General Village Act (Laws of 1870, chap. 291) to raise money for extraordinary expenditures by vote of the taxpayers are granted to the village of Lyons.

The act of 1884 provides as follows:

"The trustees and officers of any village of this State created by special charter shall have and possess the same powers as are prescribed in any general act for the incorporation of villages within this State, except as such special charter may be in conflict with any provision or provisions of said general acts."

amount paid the city may be recovered in an action for money had and received."

The amount awarded to the plaintiff by the referee was the amount which he was obliged to pay to an officer of the defendant for the use of the defendant. The amount of the recovery corre-

It may well be doubted whether this act gives to the village of Lyons the powers conferred by the General Village Act of 1870 to raise money for extraordinary expenditures, for the reason that the former act relates only to the powers of "trustees and officers," and the power to raise money for extraordinary expenditures given by the General Village Act is made dependent upon the will of the corporation to be manifested by popular vote. *Fox* v. *Village of Fort Edward* (48 Hun, 363) turns upon this distinction.

But assuming that the act of 1884 confers upon the defendant all the powers enjoyed by villages incorporated under the act of 1870, the question arises whether authority is found in the latter act for the assessment in question in this case.

Section 1 of title 4 of the act of 1870 divides village expenditures into ordinary and extraordinary expenditures. Ordinary expenditures are defined by section 2 as those necessary to carry into effect the ordinary corporate powers enumerated in section 3 of title 3 of the act. Extraordinary expenditures are not expressly defined. They may be authorized by vote of the legal electors when the question is properly submitted to them by the trustees.

It is not claimed that the expenditure in question in this case can be justified as an ordinary expenditure, but it is urged for the defendant that, except for the constitutional limitation hereinafter referred to, anything which is deemed by a majority of the legal voters to be advantageous to the village justifies an extraordinary expenditure.

This is in effect a claim that by the exercise of the power of taxation the majority may take the property of the minority for other than municipal purposes. If this claim is well founded, the minority may, against their will, be compelled to pay for the building and maintenance of an opera house or the support of a base ball club, and this without other legislative authority than that conferred in the General Village Act for extraordinary expenditures.

But private property can be taken, whether by the right of eminent domain or by the right of taxation, only for public purposes.

"Taxation, having for its only legitimate object the raising of money for public purposes and the proper needs of government, the exaction of moneys from the citizens for other purposes is not a proper exercise of this power and must, therefore, be unauthorized." (Cooley Const. Lim. [6th ed.] 598.)

Municipal corporations being created for special purposes, and their powers being strictly construed, a right to raise money by taxation for "extraordinary expenditures" should be interpreted as relating only to those special purposes and limited powers, or, in other words, it should be held to mean "extraordinary municipal expenditures."

Thus limited, there is ample reason for the existence of such a right, depend-

sponds with the loss sustained by the plaintiff. The judgment should be affirmed, with costs.

All concurred.

Judgment affirmed, with costs.

---

ent upon the will of the voters at large. The sums necessary for the maintenance of public schools and a fire department and board of health would be ordinary expenditures, while those needed for the construction of permanent and, perhaps, expensive buildings for these purposes might well be regarded as outside of the ordinary, that is, extraordinary, expenditures.

The expenditure of money for the purpose of retaining the county court house in the village of Lyons cannot be said to be for a village purpose. The fact that a removal of the court house to another village would be a considerable injury to the business interests of the village does not affect the question. The facts remain that the building is the property of the county, not of the village; that the village as such makes no use of it, and that the county might, immediately after it had been repaired at the expense of the village, have voted to sell it or tear it down and change the county seat to another village.

That an enterprise tends indirectly to the benefit of every citizen by the increase of general business activity does not justify expenditures in behalf of such an enterprise as for a public purpose. (*Weismer* v. *Village of Douglas,* 64 N. Y. 91.)

The question, what constitutes a municipal purpose, has been fully discussed in the Court of Appeals. (*Matter Appl'n of Mayor, etc.,* 99 N. Y. 569; *Sun Printing & Publishing Association* v. *The Mayor, etc.,* 152 id. 257, 264.)

No valid distinction can be drawn between building a new court house to secure a county seat and repairing an old one to retain the county seat. The fact that business interests have been built up and the village has prospered because Lyons has been for many years the county seat gives the village no vested interest, makes the existence of the county seat no part of its franchise. Every investment in business or in real estate in the village has been made subject to the right of the people of the county to change the county seat in the manner provided by the Legislature.

But if I am wrong in my position that there is nothing in the statutes to authorize the expenditure in question, I am still of the opinion that a statute purporting expressly to authorize it would violate section 10 of article 8 of the Constitution, which is as follows:

"No county, city, town or village shall hereafter give any money or property or loan its money or credit to or in aid of any individual, association or corporation, or become directly or indirectly the owner of stock in, or bonds of, any association or corporation; nor shall any such county, city, town or village be allowed to incur any indebtedness except for county, city, town or village purposes."

It is urged by the plaintiff that the money raised by the tax was paid for the reimbursement of certain persons who had advanced the money to the board of supervisors before any tax was authorized, and that, therefore, there was on the

---

face of the transaction a gift by the village to these individuals, plainly a violation of the Constitution. Assuming, however, that this may be regarded as belonging to the form and not to the substance of the transaction, and that the money was in fact voted and used for the purpose of making repairs upon the county buildings, this was a gift to a corporation and counter to the constitutional provision. The buildings were owned by the county of Wayne, which is a corporation. (Laws of 1892, chap. 686, § 2.)

It is urged on behalf of the defendant that the article of the Constitution in question was adopted to prevent such evils as had resulted from statutes which had permitted towns, villages and cities to bond themselves for the benefit of private corporations, and particularly railroad corporations; that, consequently, the word " corporation " should be held to mean " private corporation," and that a gift by a village to a county should not be regarded as in violation of the Constitution.

It is doubtless true that the main evil which provoked the adoption of this section of the Constitution was that of improvident railroad bonding (*Sun Printing & Publishing Association* v. *Mayor*, 152 N. Y. 257); but while this fact may be taken into account when, as in the case last cited, it is sought to extend the application of the section to cases not within the literal meaning of its terms, it should not avail to restrict those terms to less than their literal meaning. Few cases might be expected to arise where villages would be tempted to vote money for the repair of county court houses, but the cases would be fewer still in which such an expenditure would not violate the salutary principle that each municipal division should bear its own burdens. The general language of the Constitution was not used without good reason. The principle that the words of a statute should be construed in accordance with their usual, literal meaning applies with even more force to the words of the Constitution which, it should be assumed, were adopted with the utmost deliberation.

My conclusion is, therefore, that the village of Lyons had no authority under the statutes and the Constitution to raise money by tax for the repair of the county court house, and that, having taken the money of the plaintiff without authority, it is under obligations to return it.