## SUPREME COURT—APPELLATE DIVISION— FIRST DEPARTMENT.

### May 4, 1923.

# THE AMERICAN SOCIETY FOR THE PREVENTION OF CRUELTY TO ANIMALS v. THE CITY OF NEW YORK.

#### (205 App. Div. 335.)

(1) CONSTITUTIONAL LAW—PENAL LAW, ART. 16, § 196, PROVIDING FOR PAYMENT OF FINES TO PLAINTIFF NOT UNCONSTITUTIONAL AS VIOLATIVE OF CONSTITUTION, ART. 8, §§ 9 AND 10—PENALTIES AND FINES COLLECTED UNDER SAID ARTICLE ARE NOT PUBLIC MONEY WITHIN CONSTITUTIONAL PROVISIONS.

Penalties and fines collected under article 16 of the Penal Law upon a conviction of cruelty to animals are not public moneys within the meaning of sections 9 and 10 of article 8 of the Constitution prohibiting the State, or a county, city, town, or village from giving away or loaning its money or credit to or in aid of an individual, association or corporation, and section 196 of said article 16 which provides that the fines, penalties or forfeitures imposed or collected for violation of the provisions of the article or of any act for the prevention of cruelty to animals must be paid on demand to the American Society for the Prevention of Cruelty to Animals, except where the prosecution shall be instituted or conducted by another society duly incorporated, is not unconstitutional as violative of said provisions of the Constitution.

(2) SAME—PLAINTIFF PERFORMED PUBLIC SERVICES AND PUBLIC MONEYS MAY BE PAID IT TO DEFRAY EXPENSES.

Furthermore, in view of the fact that the plaintiff while not strictly a governmental agency, is engaged in work beneficial to the entire State and to all the people thereof, and expends large sums of money in connection with such services, much of which would otherwise necessarily be expended by the State or by various municipalities, *it seems* that public moneys may be paid to the plaintiff as a reward for such services and in part payment thereof and as a reimbursement for money expended in a public service without violating said sections of the Constitution.

APPEAL by the defendant, The City of New York, from a determination of the Appellate Term of the Supreme Court, First Department, entered in the office of the clerk of the county of New York on the 10th day of November, 1922, affirming a judgment of the Municipal Court of the City of New York, Borough of Manhattan, First District, in favor of the plaintiff.

*George P. Nicholson, Corporation Counsel (Willard S. Allen,* of counsel; *John F. O'Brien* and *Russell Lord Tarbox,* with him on the brief), for the appellant.

*Barry, Wainwright, Thacher & Symmers (Herbert ·Barry,* of counsel; *Oscar B. Wiren,* with him on the brief), for the respondent.

MERRELL, J.:

The action was brought to recover the sum of fifty dollars, being the amount of a fine collected by the defendant upon a conviction for cruelty to animals under article 16 of the Penal Law.    The action was tried in the Municipal Court of the City of New York, Borough of Manhattan.    In the third paragraph of the answer, as amended upon the trial, it is claimed that the aforesaid article of the Penal Law is invalid and violates sections 9 and 10 of article 8 of the State Constitution.    The fine sought to be recovered in this action was imposed under the aforesaid article of the Penal Law upon one Henry Lichardo, who was arrested by a city policeman and arraigned before a magistrate charged with cruelty to a horse.    The fact that the defendant was not prosecuted directly by the plaintiff is claimed to be of some importance by the appellant.    Section 196 of article 16 of the Penal Law, which was amended by chapter 374 of the Laws of 1918, and under which the plaintiff claims its right to the fine in question, provides in part as follows:   " All fines, penalties or forfeitures imposed or col-

lected for a violation of the provisions of this article, or of any act for the prevention of cruelty to animals, now in force or hereafter passed, must be paid on demand to the American Society for the Prevention of Cruelty to Animals; except where the prosecution shall be instituted or conducted by a society for the prevention of cruelty to animals duly incorporated under the general laws of this State, in which case such fine, penalty or forfeiture must be paid on demand to such society. * * * ."

The sections of the Constitution above referred to upon which the defendant, appellant, bases its contention that the above act is unconstitutional provide as follows:

" § 9. Neither the credit nor the money of the State shall be given or loaned to or in aid of any association, corporation or private undertaking. This section shall not, however, prevent the Legislature from making such provision for the education and support of the blind, the deaf and dumb, and juvenile delinquents, as to it may seem proper. Nor shall it apply to any fund or property now held, or which may hereafter be held, by the State for educational purposes."

" § 10. No county, city, town or village shall hereafter give any money or property, or loan its money or credit to or in aid of any individual, association or corporation, or become directly or indirectly the owner of stock in, or bonds of, any association or corporation; nor shall any such county, city, town or village be allowed to incur any indebtedness except for county, city, town or village purposes. This section shall not prevent such county, city, town or village from making such provision for the aid or support of its poor as may be authorized by law. * * * ."

It is claimed by the appellant that the payment of the fine in question to the plaintiff would be a gift of public money which is prohibited under the above provisions of the State Constitution. The facts material for the consideration and determina-

tion of the question here presented are not disputed.    The plaintiff is a domestic corporation created by a special act of the Legislature, known as chapter 469 of the Laws of 1866, and it is conceded that the plaintiff is the corporation of that name mentioned in the aforesaid section 196, article 16, of the Penal Law.    By its original charter, and from time to time by amendments thereto by special acts of the Legislature of this State, very broad general powers have been conferred upon the plaintiff and its officers with reference to the purposes for which it was originally incorporated.    It is claimed by the plaintiff that it is to some extent at least a governmental agency for the reason that it has been authorized to perform certain duties nominally attributable to public officers or agencies of the government and has been from time to time since its incor-poration utilized for the performance of certain public func-tions and duties, and that, as a partial payment and reimburse-ment for its services and expenditures incurred in the perform-ance of its prescribed duties, it has been authorized to receive the fines referred to in the statute.    By the provisions of section 196 of article 16 of the Penal Law the society's agents are declared to be peace officers within the meaning of section 154 of the Code of Criminal Procedure.    The special officers of the society in the city of New York wear distinctive uniforms and patrol the streets by day and by night.    In 1894 the Legis-lature passed an act (Laws of 1894, chap. 115) empowering the plaintiff to seize, impound and dispose of stray, homeless and unlicensed dogs.    The old city dog pound has been demolished and model shelters have been erected by the plaintiff.    These shelters provide necessary office room, kitchens for the prepara-tion of food for animals, destruction rooms, an ambulance house for the housing of vehicles, a repair shop for the repairing of automobiles, a dispensary and hospital for animals, and living accommodations for many of the employees.    The society maintains an ambulance service of several motor vehicles and

one horse-drawn ambulance for large animals and twelve motor ambulances for small animals. The society employs a chief veterinarian and a number of veterinary assistants, stablemen, and many other employees. The shelters, ambulance house, hospital and headquarters are open day and night for emergency calls and officers are on duty at all times to investigate cases of cruelty, to remove injured animals, to receive animals, and to provide veterinary treatment. The plaintiff has also established a custom of calling at homes for unwanted animals which are to be placed in the shelter or homes found for them. It is claimed by the plaintiff that on the average 35,000 dogs and 300,000 cats are received at the shelters annually. During the recent infantile paralysis epidemic, when it was thought that cats spread the disease, the society humanely destroyed upwards of 6,500 cats in a single day, and during the month of July in that year 95,500 cats were destroyed. Plaintiff also performs important educational work by way of spreading humane sentiment by means of publications, pamphlets, lectures and moving pictures in the public schools, churches, social clubs and civic centers, and also publishes a treatise on the care of animals. Plaintiff has organizers who travel over the State for the purpose of stimulating other humane societies and organizations and organizing new ones, and also sends out its agents to inquire into the condition of horses upon State road construction, in lumber camps, and elsewhere. The powers so conferred upon the plaintiff are by special acts of the Legislature, the Legislature thereby recognizing that the objects for which the plaintiff was organized could not be accomplished under general laws. (State Const., art. 8, § 1.) It cannot be disputed that for upwards of fifty years the Legislature and the general public have recognized that the plaintiff is performing very important public functions and renders important public service which relieves other public officers and employees from a large

amount of work.    To compensate the plaintiff for its services
performed and expenditures incurred in carrying out such
public service the Legislature enacted the aforesaid statute
granting to the plaintiff fines collected in the manner therein
set forth.    These fines, so far as disclosed, never belonged to
the public nor do they constitute public moneys within the
provisions of the aforesaid sections of the Constitution of this
State.

The question concerning the expenditure of public money
and loaning public credit has been considered in many adju-
dicated cases.    The case nearest in point and the one upon
which appellant chiefly relies is the case of Fox v. Mohawk &
Hudson River Humane Society (165 N. Y. 517).    That
action was brought by Fox to restrain the defendant from
killing, disposing of, or interfering with plaintiff's dogs, he
having refused to pay the license fee prescribed by chapter
448 of the Laws of 1896.    That act was one for the preven-
tion of cruelty to animals and empowered certain societies
organized for the prevention of such cruelty to receive license
fees, it being provided that a fee should be paid by every
person owning or harboring a dog within the limits of any city
having a specified population.    The opinion was written by
Judge Cullen, who held that the act in question was uncon-
stitutional so far as it related to the payment of the license
fee by the owner of a dog to the defendant society.    The court
held that license fees were public money within the terms of
the statute.    Judge Cullen, in his opinion referring to the
above constitutional provision, said in part:    " By this com-
prehensive enumeration of money of the State, of a county,
city, town and village, it is plain that the Constitution meant
to include all public moneys which are raised in any manner
throughout the State as an exaction from the citizen by the
taxing or licensing power of government.    *Pecuniary penal-
ties for offenses are not imposed under either the taxing or
licensing power of the State,* and probably would not fall

within these constitutional restrictions as to public money. So little vested right of property is there in a penalty that in a civil case it may be taken away by the repeal of the statute at any time before judgment (Cooley's Constitutional Limitations, p. 383; People ex rel. Fleming v. Livingston, 6 Wend. 526) and in criminal cases also by pardon.   *   *   *   If the appropriation to the defendant of license fees prescribed by this statute is a gift of money to, or in aid of an association, corporation or private undertaking, then it is in conflict with the constitutional provision cited.   It is not necessary to determine whether these license fees are to be regarded as the money of the city or the money of the State.   If money of the city, only permissive legislation empowering its appropriation is authorized by the Constitution; if it is the money of the State, it does come within the exception to the constitutional inhibition, to wit, 'Provision for the education and support of the blind, the deaf and dumb and juvenile delinquents.'   It is contended, however, that the defendant, though a corporation organized by the voluntary acts of individuals, is a 'subordinate governmental agency' and that an appropriation of money to its use is but an appropriation of money for the support of the government and not within the constitutional restrictions.   *   *   *   I certainly should deny the right of the Legislature to vest in private associations or corporations authority and power affecting the life, liberty and property of the citizens, except that of eminent domain, to be exercised for a public purpose and the management and control of reformatory institutions to which persons may be committed by the judicial or other public authorities.   *   *   *   Of course, the State or any of its subdivisions may employ individuals or corporations to do work or render service for it; but the distinction between a public officer and a public employee or contractor is plain and well recognized.   *   *   *   My chief objection is that the corporations are private in the sense that they proceed from the voluntary action of individual citizens

alone * * * ; that the agents or officers of the corporation are appointed such by the corporators and that if such agents are invested by virtue of their agency alone with the power of public officers, it is in substance devolving the choice of public officers on a few of the citizens, and possibly persons not citizens, while under the Constitution all public officers must be elected or appointed by other public authorities and thus trace their title to power and authority either immediately or mediately back to the people. * * * But if we assume that the Legislature can create and has created this defendant ' a subordinate governmental agency ' to assist in the enforcement of the criminal laws relative to cruelty to animals, still that assumption will not establish the proposition that the devotion of these license fees is to a governmental purpose. * * * We are of opinion, therefore, that the statute, so far as it compels the owners of dogs to pay license fees to the defendant for the purposes prescribed in the statute, is an unauthorized appropriation of public moneys, and is in conflict with the Constitution."

The above opinion was concurred in by all members of the court, except Judge Gray, who concurred in part. It is evident that the Court of Appeals in the Fox Case would have sustained a statute authorizing the payment of a penalty to the plaintiff. The Fox Case sustains the contention of the plaintiff, respondent, that the payment of a penalty is not the payment of public money to a person or corporation.

As above stated, the plaintiff was incorporated by a special act of the Legislature to which numerous amendments have from time to time been made conferring additional rights and powers upon the plaintiff and its officers. That the respondent has rendered valuable and efficient aid in the enforcement of the laws of the State has been recognized by the Legislature, the public and the courts. (Davis v. American Society, etc., 75 N. Y. 362; Nicchia v. New York, 254 U. S. 228; People ex rel. Westbay v. Delaney, 73 Misc. Rep. 5; affd. 146 App.

Div. 957.)   It cannot be disputed that the plaintiff, respondent, and its officers have been for a long period of time functioning as an instrument of public administration.   While it is true that strictly governmental powers cannot be conferred upon a corporation or individual for the reasons stated by Judge Cullen in Fox v. Mohawk & Hudson River Humane Society (supra), still it has been held by a long line of decisions that such corporations may function in a purely administrative capacity or manner.   (White v. Inebriates' Home, 141 N. Y. 123; People ex rel. Board of Charities v. New York Society for Prevention of Cruelty to Children, 161 id. 233; People v. Brooklyn Cooperage Co., 187 id. 142.)   It, therefore, follows that the Legislature has power to grant compensation to the plaintiff for services performed and for expenditures made in behalf of the public at large.   Moreover, as the penalty sought to be collected in the case at bar never at any time formed a part of the public moneys within the purview of the Constitution, there is no objection, legal or otherwise, to a provision of law authorizing the payment of such penalties to the plaintiff or to any other society or person for a similar purpose. Such payments are analogous to the familiar payments from penalties made formerly to game protectors discovering violations of the law and bringing offenders to punishment.   While it is not necessary in order to decide the case at bar to hold that strictly public moneys can be used for such purposes, I am of the opinion that such expenditures would be warranted and not unconstitutional, being reasonable awards for public service.

In the case of White v. Inebriates' Home (141 N. Y. 123), above cited, it was held that a statute authorizing the payment of certain excise moneys by the city to the defendant was constitutional on the ground that in the performance of its reformatory duties the defendant was authorized to receive certain patients and drunkards from the jails and penitentiaries of the city.   Such excise moneys were by said statute authorized to be paid to the treasurer of the defendant upon presentation of a

resolution declaring that such payments were necessary for the care and maintenance of the indigent poor treated therein. The Court of Appeals held that as the defendant thereby relieved the city of the performance of certain duties in respect to the aforesaid persons, the act under which the payments were made was constitutional. The rule laid down by Judge Cullen in Fox v. Mohawk & Hudson River Humane Society (supra, was reaffirmed by the Court of Appeals in People v. Brooklyn Cooperage Co. (187 N. Y. 142). That action was brought by the State against the said defendant and Cornell University to enjoin an alleged waste of lands acquired by such university under chapter 122 of the Laws of 1898, which authorized the university to establish a department of forestry and provided for the purchase of certain lands for that purpose. The above sections of the Constitution were involved. The opinion was written by Judge Bartlett, and after referring to the opinion of Judge Cullen in the Fox Case and the quite numerous laws appropriating public money for educational purposes, stated: " It is the policy of the State to foster non-sectarian education in various directions by selecting some corporation to act as its subordinate governmental agency, undertaking to render services to the State in consideration of appropriations made."

It has been recognized by the Court of Appeals in very numerous cases that the above sections of the Constitution are not violated when public funds are expended under contract for the rendition of public service. Public moneys, however, cannot be expended for the benefit of a private individual or corporation or for the improvement of the property of any such. But the Court of Appeals has uniformly held that public moneys can be expended in recognition of services and claims founded upon equity and justice, even though such claims could not be enforced in a court of law. (Sun Publishing Assn. v. Mayor, 152 N. Y. 257; Deady v. Village of Lyons, 39 App. Div. 139; Holley v. City of Mount Vernon, 141 id. 823; Smith v. Smythe, 197 N. Y. 457; Horton v.

Andrus, 191 id. 231; People ex rel. Simon v. Bradley, 207 id. 592; Matter of Chapman v. City of New York, 168 id. 80; White v. Inebriates' Home, 141 id. 123; People v. Westchester County Nat. Bank, 231 id. 465; Munro v. State of New York, 223 id. 208.)

So long as such payments are made for a public purpose and in recognition of public service rendered for the benefit of the whole people they are not in violation of the above provisions of the State Constitution.   The above sections of the Constitution were inserted therein as the result of long-continued abuses brought about by legislative acts granting to corporations money or property.   Railroad corporations were the chief offenders.   The question concerning an amendment to the Constitution to prevent such use of public funds came up before several constitutional conventions, notably the conventions of 1846, 1867 and 1874.   In 1874 a proposed amendment intended to cure the evil having been approved by the Legislature, was adopted by the people.   (See Const. 1874, art. 8, §§ 10, 11.)   It is plain that the constitutional provision was originally intended to prevent the payment of any public money to an individual or corporation, even if the payment was to be made for a so-called public purpose, except for the purposes stated in the Constitution.   In commenting upon these constitutional provisions in People v. Westchester County Nat. Bank (supra), Judge Andrews said: "Whether the purpose is a public one, therefore, is no longer the sole test as to the proper use of the State's credit.   Such a purpose may not be served in one particular way.   However important, however useful the objects designed by the Legislature, they may not be accomplished by a gift or a loan of credit to an individual or to a corporation.   It will not do to say that the character of the act is to be judged by its main object—that because the purpose is public, the means adopted cannot be called a gift or a loan."

While a public purpose cannot be promoted by the payment

27

of money or by the loan of public credit to an individual or corporation, except as stated in the Constitution, there is nothing in the Constitution which prevents the use of public funds or the loan of public credit for the payment of a just debt or moral obligation, or for the payment of services rendered, so long as such debts or services were rendered for the people at large and were for the benefit of the entire community or State. (Sun Publishing Assn. v. Mayor, 152 N. Y. 257; Matter of Chapman v. City of New York, 168 id. 80; Horton v. Andrus, 191 id. 231; Matter of Borup, 182 id. 222; Cole v. State of New York, 102 id. 8; O'Hara v. State of New York, 112 id. 146; Trustees of Exempt Firemen's Fund v. Roome, 93 id. 313.)

I am, therefore, of the opinion that the plaintiff is entitled to receive the penalty for which it sues to recover. The plaintiff is rendering valuable public service. Its officers and agents are constantly engaged in work beneficial to the entire State and to all of the people thereof. Large sums of money are necessarily expended in connection with the rendition of such services, much of which would otherwise be necessarily expended by the State or by various municipalities therein. As a reward for such services and in part payment thereof, and as a reimbursement for money expended in a public service, the Legislature has seen fit to enact the law under which the plaintiff seeks to recover the penalty in this action. The penalty paid by the people who violated the statute is not, strictly speaking, public money. It was not money raised by tax or paid for a license. The State never had any title thereto. The law which imposed the penalty gave it to the plaintiff,

The determination should be affirmed, with costs.

CLARKE, P. J., SMITH, PAGE and McAVOY, JJ., concur.

Determination affirmed, with costs.