OPINION OF THE COURT
Joseph J. Maltese, J.
This is a decision on a motion to controvert a search *418 warrant issued on April 10, 1992 by Judge Michael Brennan of the Criminal Court of Richmond County.
The affidavit in support of the application for the search warrant sworn to by Peace Officer David Roman stated in part:
"1. That on April 1, 1992 the American Society for the Prevention of Cruelty to Animals (hereinafter referred to as ASPCA) received a civilian complaint stating that 'a woman beat her dogs and that said dogs have open wounds and that the living conditions are unsanitary for such animals at 893 Fr. Capodanno Blvd.’
"2. 'that as a result of the aforementioned complaint the deponent (ASPCA P.O. Roman) visited 893 Fr. Capodanno Blvd. on April 2, 1992 and spoke to Adrienne Linder who refused the deponent permission to inspect the inside of said premise. The deponent did observe approximately five (5) dogs outside of said premise each having the strong odor of animal feces and urine emanating from them. The deponent did also hear a large number of dogs inside said premise barking and fighting. Deponent further states that Adrienne Linder mentioned that she had approximately twenty-nine (29) dogs inside her premise.’
"3. 'Deponent further states that on April 9, 1992 the deponent visited 893 Fr. Capodanno Blvd. and spoke to Adrienne Linder who again refused deponent permission to inspect the inside of said premise. The deponent did observe through a rear window of said premise a room containing approximately three (3) dogs and said room was infested with flies and the floor was saturated with animal feces and urine. Deponent further states that a strong odor of animal feces and urine and the odor of ammonia emanated from the premise and that a large number of dogs were barking and fighting inside said premise.’
"4. That ASPCA Peace Officer Roman 'further states that he observed approximately five (5) dogs outside of said premise two (2) of which had open wounds on their hind legs and hind quarters and that another dog had sections of hair missing on its tail. Deponent also states that the yard surrounding said premise was covered by animal feces. The foregoing represents the grounds for my belief.’ ”
defendant’s contentions
The defendant has made a motion to controvert the search *419 warrant and, in a supplemental motion, the defendant requests the same relief. In addition, defendant seeks: (1) to suppress all of the evidence gathered when the warrant was executed and (2) to preclude the People from introducing at trial any testimony or report by expert witnesses as to the condition of any of the animals seized. This portion of the original motion to controvert the search warrant and the supplemental motion are consolidated for the purpose of this decision. A separately issued decision has responded to the defense motion on all other issues.
The defendant contends that the application for the search warrant failed "to establish reasonable cause of [for] the issuance of said search warrant” in that the search warrant was issued without reasonable cause to believe an offense was committed. Defendant further alleges "the People are relying on an unnamed and unidentified 'civilian complaint’ ”. The defendant claims that this unnamed and unidentified person must meet the strictures of the Aguilar-Spinelli rule and that both the credibility and reliability of the informant must be established (Aguilar v Texas, 378 US 108 [1964]; Spinelli v United States, 393 US 410 [1969]).
THE AUTHORITY OF ASPCA PEACE OFFICERS
The American Society for the Prevention of Cruelty to Animals has been empowered, for almost 100 years, to seize, impound and dispose of animals (see, L 1894, ch 115) and the society’s agents are declared to be peace officers by CPL 2.10 (7) (see also, American Socy. for Prevention of Cruelty to Animals v City of New York, 205 App Div 335). An ASPCA peace officer is empowered by CPL 2.20 (1) (c) with "The power to carry out warrantless searches whenever such searches are constitutionally permissible and acting pursuant to their special duties”.
It is the obligation of ASPCA peace officers to investigate any information supplied from any source, anonymous or otherwise, in the furtherance of his official duties. If and when such a peace officer has just and reasonable cause to suspect that any of the provisions of law relating to animals is being violated, that officer is authorized to seek a warrant authorizing the entering and searching of such building or place. (See, Agriculture and Markets Law § 372.)
AGRICULTURE AND MARKETS LAW
Sections 371, 372 and 373 of the Agriculture and Markets *420 Law also sets forth the powers of peace officers with reference to the protection of animals:
"§ 371. Powers of peace officers
"A constable or police officer must, and any agent or officer of any duly incorporated society for the prevention of cruelty to animals may issue an appearance ticket pursuant to section 150.20 of the criminal procedure law, summon or arrest, and bring before a court or magistrate having jurisdiction, any person offending against any of the provisions of article twenty-six of the agriculture and markets law. Any officer or agent of any of said societies may lawfully interfere to prevent the perpetration of any act of cruelty upon any animal in his presence. Any of said societies may prefer a complaint before any court, tribunal or magistrate having jurisdiction, for the violation of any law relating to or affecting animals and may aid in presenting the law and facts before such court, tribunal or magistrate in any proceeding taken.”
"§ 372. Issuance of warrants upon complaint
"Upon complaint under oath or affirmation to any magistrate authorized to issue warrants in criminal cases, that the complainant has just and reasonable cause to suspect that any of the provisions of law relating to or in any wise affecting animals are being or about to be violated in any particular building or place, such magistrate shall immediately issue and deliver a warrant to any person authorized by law to * * * enter and search such building or place, and to arrest any person there present found violating any of said laws, and to bring such person before the nearest magistrate of competent jurisdiction, to be dealt with according to law.”
"§373. Seizure of animals lost, strayed, homeless, abandoned or improperly confined or kept * * *
"2. Any such agent or officer may also lawfully take possession of any animal in or upon any premises other than a street, road or other public place, which for more than twelve successive hours has been confined or kept in a crowded or unhealthy condition or in unhealthful or unsanitary surroundings or not properly cared for or without necessary sustenance, food or drink, provided that a complaint stating just and reasonable grounds is made under oath or affirmation to any magistrate authorized to issue warrants in criminal cases, and that such warrant authorizing entry and search is issued and delivered by such magistrate; if just and reasonable cause is shown, the magistrate shall immediately issue such warrant.”
*421 THE LAW OF SEARCH WARRANTS
While the United States Supreme Court expanded the Aguilar-Spinelli test to enable a court to look at the "totality of circumstances,” in issuing a search warrant, in Illinois v Gates (462 US 213 [1983]), and allowed a "good faith” exception to the strict credibility and reliability tests of an informant, in United States v Leon (468 US 897 [1984]), the New York Court of Appeals has rejected both of these expansions of the rule and retained the original Aguilar-Spinelli "two-prong” test (see, People v Johnson, 66 NY2d 398 [1985]; People v Bigelow, 66 NY2d 417 [1985]; People v Griminger, 71 NY2d 635 [1988]).
As a general rule, a search warrant is issued on the basis of information supplied by third parties which is then articulated by the police officer. Under those conditions it is necessary to establish the credibility of the informant to validate the "hearsay” evidence. The Aguilar-Spinelli "two-pronged” test requires that the Magistrate issuing the warrant believe (1) the informant is reliable and that (2) his/her information is credible. It is the responsibility of a Judge to make this critical evaluation based upon the information given the court by the informant as conveyed by either a peace officer or police officer.
Pursuant to the requirements of CPL 690.35 a search warrant may be issued only upon probable cause supported by oath or affirmation (People v Jonas, 35 AD2d 615). "The test for issuance of a warrant and for allowance of the execution exceptions is simply the satisfaction of the court which in the first instance must rest on a legal and factual finding of probable cause, referred to in the statute as reasonable cause” (see, Bellacosa, Practice Commentary, McKinney’s Cons Laws of NY, Book 11A, CPL 690.40, at 389). The determination of an application for a search warrant must rest upon the legal and factual finding of probable cause and when that information is derived from an unknown and untested source it lacks the required assurance of truthfulness.
FINDINGS OF THE COURT
However, the Aguilar-Spinelli hearsay evidence test, upon which the defendant relies to invalidate the search warrant, is not applicable to this case. The information that served as the basis for the warrant did not come from an unknown and unidentified informant, but rather from the observations of the officer of the ASPCA in a sworn affidavit. It is undisputed *422 that the officer made his own investigation following a complaint made to the ASPCA and, upon investigating, he discovered and observed alleged violations in plain view. Based upon his own personal knowledge of the violations, it was then proper for him to supply the sworn affidavit in support of the application for the search warrant (People v Kirby, 168 AD2d 981 [4th Dept 1990]; People v Deliz, 172 AD2d 877 [3d Dept 1991]; People v Bartolomeo, 53 NY2d 225 [1981], overruled on other grounds People v Bing, 76 NY2d 331 [1990]).
In the instant case, the affidavit of the ASPCA peace officer is based upon his own personal observation of the conditions which existed when he first approached the defendant’s residence. His visual, auditory and olfactory observations during the first conversation with the defendant provided the basis upon which the officer concluded that a violation existed. In addition, the officer could make further conclusions from defendant’s own statement that she harbored 29 dogs in the premises. The court finds that the officer had reasonable cause to believe from his own observations that violations of the New York State Agriculture and Markets Law §§ 353 and 356 existed at the premises.
While it may be arguable that the peace officer had justification to immediately enter the premises under the authority of the aforementioned provisions of the Agriculture and Markets Law on April 2, 1992, the date of his first visit, he nonetheless chose not to enter the premises. However he did return to follow up his investigation. In matters of this kind it is arguably necessary to establish that the condition of the animals has existed over a period of time as is required by Agriculture and Markets Law § 356:

"Failure to provide proper food and drink to impounded animal

"A person who, having impounded or confined any animal, refuses or neglects to supply to such animal during its confinement a sufficient supply of good and wholesome air, food, shelter and water, is guilty of a misdemeanor, punishable by imprisonment for not more than one year, or by a fine of not more than one thousand dollars, or by both. In case any animal shall be at any time impounded as foresaid, and shall continue to be without necessary food and water for more than twelve successive hours, it shall be lawful for any person, from time to time, and as often as it shall be necessary, to enter into and upon any pound in which any such animal *423 shall be so confined, and to supply it with necessary food and water, so long as it shall remain so confined; such person shall not be liable to any action for such entry.” (Emphasis added.)
On his second visit one week later, the officer again made the same visual, olfactory and auditory observations as his first visit, but on this occasion he also observed "five dogs outside of said premises, two of which had open wounds on the hind legs and hind quarters and that another dog had sections of hair missing on its tail * * * and that the yard surrounding said premises was covered by animal feces.” These additional observations, coupled with his other observation outside of the premises gave the officer sufficient probable cause to seek a search warrant.
This court need not look to the issue of the alleged improper look into the window in the rear of the premises by the officer on his second visit. Based upon his own senses of sight, hearing and smell, the officer observed sufficient acts of cruelty from outside of the premises to substantiate his affidavit in support of the application for a search warrant.
CONCLUSION
The facts alleged by the defendant do not establish a legal basis to controvert the warrant. Where the facts alleged in the warrant application are not controverted, no hearing will be granted (People v Cusumano, 108 AD2d 752 [2d Dept 1985]).
Accordingly, pursuant to CPL 710.60 (3) the motion to controvert the warrant is denied and the application for a hearing on the issuance of the search warrant is also denied.